**[ORAL ARGUMENT NOT YET SCHEDULED]**

**Nos. 23-5103, 24-5047**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

STATE OF NEW YORK; STATE OF HAWAII; STATE OF NEW JERSEY; CITY OF NEW YORK; CITY AND COUNTY OF SAN FRANCISCO,

Plaintiffs-Appellees,

v.

JOSEPH R. BIDEN, JR., in his official capacity as the President of the United States; LOUIS DEJOY, in his official capacity as the Postmaster General of the United States; UNITED STATES POSTAL SERVICE,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLANTS**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK B. STERN
ADAM C. JED
McKAYE L. NEUMEISTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7231*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *202-514-8100*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

The plaintiffs-appellees are the State of New York, the State of Hawaii, the State of New Jersey, the City of New York, and the City and County of San Francisco.

The defendants-appellants are Joseph R. Biden, Jr., in his official capacity as President of the United States; Louis DeJoy, in his official capacity as the Postmaster General of the United States; and the United States Postal Service.

The following organizations and groups participated as amici before the district court: (1) the United States House of Representatives; (2) a group of Members of Congress, comprising Senators Richard Blumenthal, Cory A. Booker, Sherrod Brown, Tom Carper, Mazie K. Hirono, Amy Klobuchar, Edward J. Markey, Jeffrey A. Merkley, Jack Reed, Bernard Sanders, Jeanne Shaheen, Elizabeth Warren, Sheldon Whitehouse, and Ron Wyden; (3) a group of 32 local and tribal governments, comprising the City of Alameda, California; City of Atlanta, Georgia; City of Austin, Texas; City of Berkeley, California; City of Boston, Massachusetts; City of Cambridge, Massachusetts; City of Chicago, Illinois; City of Cincinnati, Ohio; City of Columbus, Ohio; Cook County, Illinois; City of Dayton, Ohio; City of

i

East Palo Alto, California; City of Flint, Michigan; City of Gary, Indiana; Harris County, Texas; City of Houston, Texas; County of Los Angeles, California; City of Los Angeles, California; City of Madison, Wisconsin; Marin County, California; County of Monterey, California; City of Oakland, California; City of Philadelphia, Pennsylvania; City of Pittsburgh, Pennsylvania; City of Portland, Oregon; City of Saint Paul, Minnesota; County of Santa Clara, California; City of Santa Cruz, California; City of Seattle, Washington; City of Somerville, Massachusetts; City of West Hollywood, California; and Yurok Tribe; and (4) Brady—a non-profit organization—and Team ENOUGH—a Brady-sponsored initiative.

## B.    Rulings Under Review

The government is appealing from the Order entered on September 30, 2022, JA348; the Memorandum Opinion entered on October 6, 2022, JA349; the Order entered on March 6, 2023, JA437; the Final Judgment entered on February 2, 2024, JA443; and all orders and decisions that merge into those.  These rulings were issued by the Honorable Emmet G. Sullivan, United States District Court for the District of Columbia, in Case No. 20-cv-2340.  The district court's October 6, 2022 opinion is published at 636 F. Supp. 3d 1.

## C.    Related Cases

An appeal from a preliminary injunction in this case was previously docketed in this Court.  *See New York v. Trump*, No. 20-5352 (D.C. Cir.) (appeal docketed

ii

Nov. 30, 2020).  That appeal was voluntarily dismissed.  *See New York v. Trump*, No. 20-5352, 2021 WL 672390 (D.C. Cir. Feb. 10, 2021).  The government is not aware of any pending related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. vi

GLOSSARY ....................................................................................... xi

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION....................................................4

STATEMENT OF THE ISSUES.........................................................5

PERTINENT STATUTES AND REGULATIONS...............................5

STATEMENT OF THE CASE.............................................................6

    I.      Statutory Background.............................................................6

    II.     Procedural History .............................................................10

          A.    Preliminary Injunction Proceedings ................................10

          B.    October 21, 2020 – September 29, 2022...........................19

          C.    Summary Judgment Rulings .............................................22

          D.    Denial of Reconsideration and Clarification of the Injunction .......27

SUMMARY OF ARGUMENT .........................................................28

STANDARD OF REVIEW ...............................................................30

ARGUMENT .....................................................................................31

THE SUMMARY JUDGMENT RULING MISTAKENLY
ADJUDICATES QUESTIONS PROPERLY RESOLVED BY
THE POSTAL REGULATORY COMMISSION AND ALSO
EXCEEDS THE PROPER SCOPE OF ULTRA VIRES REVIEW ......................31

A.    The Postal Regulatory Commission, and Not a District Court, Should Determine in the First Instance Whether the Postal Service Failed to Seek an Advisory Opinion from the Commission ................................................................31

B.    The District Court's Prophylactic Injunction Wrongly Usurps the Role of the Postal Regulatory Commission ......................43

CONCLUSION ................................................................................................50

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:**     **Page(s)**

*Anatol Zukerman & Charles Krause Reporting, LLC v. USPS,*
    64 F.4th 1354 (D.C. Cir. 2023) ........................................................ 31, 43

*Axon Enter., Inc. v. Federal Trade Comm'n,*
    598 U.S. 175 (2023) ....................................... 2, 34, 36, 36-37, 39, 41, 42

*Board of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.,*
    502 U.S. 32 (1991) ...........................................................................36

*Bovard v. USPS,*
    47 F.3d 1178, 1995 WL 74678 (10th Cir. Feb. 24, 1995) .......................... 13, 34

*Buchanan v. USPS,*
    508 F.2d 259 (5th Cir. 1975) ...................................................... 8, 9, 42

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) .........................................................................49

*Cobell v. Kempthorne,*
    455 F.3d 301 (D.C. Cir. 2006) ..............................................................48

*Department of Transp. v. Public Citizen,*
    541 U.S. 752 (2004) .........................................................................47

*Elgin v. Department of the Treasury,*
    567 U.S. 1 (2012) ...................................................................... 41, 43

*Erickson v. U.S. Post Office,*
    250 F. App'x 757 (8th Cir. 2007)...........................................................34

*Federal Express Corp. v. U.S. Dep't of Commerce,*
    39 F.4th 756 (D.C. Cir. 2022) ...........................1-2, 32-33, 33, 36, 38, 39, 43-44, 44, 46

*Foster v. Pitney Bowes Corp.,*
    549 F. App'x 982 (Fed. Cir. 2013)...................................................... 13, 34

*Franchise Tax Bd. v. USPS*,
    467 U.S. 512 (1984) ................................................................... 6, 31

*Gill v. Whitford*,
    585 U.S. 48 (2018) ...........................................................................49

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ........................................................................40

*Immigration & Naturalization Serv. v. Orlando Ventura*,
    537 U.S. 12 (2002) ...........................................................................47

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ........................................................................36

*LeMay v. USPS*,
    450 F.3d 797 (8th Cir. 2006) .................................................. 13, 34, 41

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ................................................................. 43, 49

*National Ass'n of Greeting Card Publishers v. USPS*,
    462 U.S. 810 (1983) ..........................................................................6

*National Ass'n of Postal Supervisors v. USPS*,
    602 F.2d 420 (D.C. Cir. 1979) ................................................ 32, 39, 44

*National Ass'n of Postal Supervisors v. USPS*,
    26 F.4th 960 (D.C. Cir. 2022) .................................................. 7, 32, 44

*National Easter Seal Soc'y for Crippled Children & Adults v. USPS*,
    656 F.2d 754 (D.C. Cir. 1981) .................................................... 7, 31

*Pep-Wku, LLC v. USPS*,
    No. 20-cv-00009, 2020 WL 2090514 (W.D. Ky. Apr. 30, 2020).......................34

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
    881 F.3d 75 (D.C. Cir. 2018), *abrogated on other grounds by*
    *Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ........................................................................40

*Thompson v. Allen County*,
115 U.S. 550 (1885) ........................................................................36

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ............................................... 2, 16, 25, 36, 41

*United States v. Oakland Cannabis Buyers' Coop.*,
532 U.S. 483 (2001) ........................................................................50

*USPS v. Council of Greenburgh Civic Ass'ns*,
453 U.S. 114 (1981) ..........................................................................7

*Vanda Pharm., Inc. v. FDA*,
123 F.4th 513 (D.C. Cir. 2024) ......................................................30

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........................................................................49

*White v. U.S. Post Office*,
No. 23-1239, 2024 WL 2973705 (10th Cir. June 13, 2024) ...............34

**Statutes:**

Postal Accountability and Enhancement Act,
Pub. L. No. 109-435, 120 Stat. 3198 (2006) ...........................................8
39 U.S.C. § 501 .......................................................................................8
39 U.S.C. § 3661 ...................................................................................12
39 U.S.C. § 3661(b) ................................... 8, 9, 15, 17, 21, 23, 26, 28,
30, 42, 47, 48, 49
39 U.S.C. § 3661(c).................................................................................9
39 U.S.C. § 3662 ............................................................................ 13, 15
39 U.S.C. §§ 3662-3663.........................................................................39
39 U.S.C. § 3662(a)....................................................... 9, 16, 33, 38, 40
39 U.S.C. § 3662(b)(1)(A) .......................................................................9
39 U.S.C. § 3663 ......................................................... 10, 16, 33, 40
39 U.S.C. § 3664 ...................................................................... 10, 33

Postal Reorganization Act,
Pub. L. No. 91-375, 84 Stat. 719 (1970) ................................................6

39 U.S.C. § 101 .................................................................................. 12, 26
39 U.S.C. § 403 .................................................................................. 12, 26
39 U.S.C. § 409 .......................................................................................4
39 U.S.C. § 409(a) ............................................................................ 24, 40
39 U.S.C. § 410(a) .............................................................................. 7, 32

5 U.S.C. § 7703(a)(1) ...............................................................................41

28 U.S.C. § 569(a) ...................................................................................41

28 U.S.C. § 1291 .......................................................................................5

28 U.S.C. § 1331 .......................................................................................4

28 U.S.C. § 2201(a) ...................................................................................4

30 U.S.C. § 823(d)(2)(A)(i) ......................................................................40

## Regulation:

39 C.F.R. pt. 3020 ....................................................................................9

## Rules:

Fed. R. App. P. 4(a)(1)(B) .........................................................................5

Fed. R. App. P. 4(a)(4)(A)(iv) ...................................................................5

Fed. R. Civ. P. 59(e) .................................................................................5

Fed. R. Civ. P. 65(d)(1)(B)-(C) ................................................................48

## Legislative Materials:

116 Cong. Rec. 21,709 (1970) ......................................................... 7, 31, 32

H.R. Rep. No. 91-1104 (1970) .......................................................... 6, 16, 24

H.R. Rep. No. 109-66 (2005) .............................................................. 8, 41

S. Rep. No. 108-318 (2004) ....................................................................7


**Other Authorities:**

*Associated Mail and Parcel Centers*, Docket No. C2012-1
   (Postal Regulatory Comm'n initiated Mar. 15, 2012),
   https://perma.cc/FXH9-A629 ...............................................................42

*Changes in Retail Hours*, Docket No. C2014-1
   (Postal Regulatory Comm'n initiated Apr. 30, 2014),
   https://perma.cc/S5MN-LQ7X ..............................................................42

Complaint Regarding United States Postal Service Violation of
   39 U.S.C. § 3661(b), *New York*,
   Docket No. C2022-1 (Postal Regulatory Comm'n Oct. 7, 2021),
   https://perma.cc/7P8A-GMUX...............................................................36

*New York*, Docket No. C2022-1
   (Postal Regulatory Comm'n initiated Oct. 7, 2021),
   https://perma.cc/2A8X-3WSU ...............................................................42

Order Granting Motion to Dismiss Complaint, *New York*,
   Docket No. C2022-1 (Postal Regulatory Comm'n Dec. 17, 2021),
   https://perma.cc/4A2H-736P ...................................................................8

*Public Inquiry on Changes Associated with the Delivering for
   America Plan*, Docket No. PI2023-4
   (Postal Regulatory Comm'n initiated Apr. 20, 2023),
   https://perma.cc/C9W6-4PAW...............................................................42

USPS, *Postal Facts*,
   https://perma.cc/DQP9-CGWJ ................................................................6

33 Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 8307 (2d ed.) ................................32

**GLOSSARY**

| | |
|---|---|
| APA | Administrative Procedure Act |
| JA | Joint Appendix |
| PRC | Postal Regulatory Commission |
| USPS | United States Postal Service |

## INTRODUCTION

This is one of many lawsuits filed in the run-up to the 2020 election alleging that the U.S. Postal Service (USPS or Postal Service) had improperly made operational changes that were slowing mail service.  As directly relevant here, plaintiffs in this case alleged that the Postal Service undertook several changes in mail processing and delivery without first seeking an advisory opinion or opinions from the Postal Regulatory Commission (PRC), as required for certain changes in mail service.

Congress has explicitly excluded the Postal Service from judicial review under the Administrative Procedure Act (APA).  Congress instead created a scheme in which certain claims may be brought to the Postal Regulatory Commission with subsequent review in this Court.  That scheme applies explicitly to the requirement to seek an advisory opinion from the Commission.  District courts thus play a limited role in reviewing actions of the Postal Service for consistency with statutory requirements.  Even for claims that may not be brought to the Commission, district courts can only engage in "non-statutory" or "ultra vires" review of the Postal Service.  This limited equitable authority permits district courts to enjoin extreme agency error where the agency has plainly acted in contravention of a specific statutory command and there is no alternative procedure for reviewing the error. *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763-766 (D.C. Cir.

2022).  For claims that may be brought to the Commission, there is another procedure for review and district courts therefore lack authority to act.  Additionally, for claims that can be presented to the Commission with subsequent review in this Court, court after court has held that this statutory review process is "a 'comprehensive review process' . . . [that] oust[s] district courts of jurisdiction," *Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 186 (2023); *see generally Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-213 (1994).

The district court issued a preliminary injunction prior to the 2020 election, barring what it viewed as a range of changes to mail processing and delivery during the height of the COVID-19 pandemic.  The court justified that intervention by citing significant slowdowns in mail delivery that the court believed were threatening voters' ability to vote by mail as well as the plaintiffs' ability to provide essential services to their residents during the height of the pandemic, such as administering public benefits programs.  The court believed that the Postal Regulatory Commission could not act sufficiently quickly and that this ongoing harm and the imminence of the election prevented the Commission from granting effective relief.  The district court therefore concluded that it had authority to act.  The federal government did not pursue an appeal.  The Postal Service implemented the preliminary injunction in this case as well as preliminary rulings issued in other cases.  And following the November 2020 election, the eleven other related cases settled or were dismissed.

2

In this case, cross-motions for summary judgment had been fully briefed on November 2, 2020.  Those motions remained pending for nearly two years.  During that time, the Postal Regulatory Commission received and addressed a range of complaints about the Postal Service.  Then, in October 2022, the district court granted summary judgment to the plaintiffs in part, holding that the Postal Service should have sought an advisory opinion from the Commission back in 2020.  And the district court issued a permanent injunction, establishing new standards to govern when the Postal Service must seek advisory opinions from the Commission in the future.

The district court erred in declaring, with little discussion, that it had the authority to issue such an order.  Even assuming that COVID-19 and election-related exigencies in October 2020 meant that the Postal Regulatory Commission could not have adequately addressed plaintiffs' request for immediate relief, those conditions had long since ceased two years later when the court issued a permanent injunction and, even on the district court's own reasoning, no sound basis existed for its exercise of ultra vires review.  The court did not address the absence of the conditions that it had cited in justifying its 2020 intervention and instead justified its summary judgment ruling solely by reference to the circumstances that it believed existed in 2020.

3

The relief ordered in the permanent injunction underscores the absence of district court authority. Plaintiffs' suit claimed that the Postal Service had erred in failing to seek an advisory opinion from the Postal Regulatory Commission before undertaking certain alleged changes in postal services in 2020. As clarified in March 2023, the court's permanent injunction requires, among other things, that the Postal Service seek an advisory opinion from the Postal Regulatory Commission before curtailing late and extra trips by postal personnel "following a decline in nationwide service scores by more than 10 percentage points for a period of at least two-weeks." JA440-441. Under no theory would non-statutory review of the asserted failure to seek an advisory opinion in 2020 permit a broad prophylactic injunction establishing court-imposed guidelines for future changes in late and extra trips by postal personnel. The court-created prophylaxis usurps the role of the Postal Regulatory Commission and, even under ordinary APA review, it would run afoul of basic principles of equity and administrative law.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 2201(a) and 39 U.S.C. § 409. JA26. On September 30, 2022, the district court issued an order stating that the parties' cross-motions for summary judgment were each granted in part and denied in part. JA348. On October 6, 2022, the district court issued a memorandum opinion stating the claims on which each party had

4

prevailed and also issuing a permanent injunction. JA349-413. On October 28, 2022, the federal government timely filed a motion to alter or amend the judgment. JA414-415; *see* Fed. R. Civ. P. 59(e). On March 6, 2023, the district court denied that motion but significantly clarified the injunction. JA437-441. The federal government filed a timely notice of appeal on May 4, 2023. JA442; *see* Fed. R. App. P. 4(a)(1)(B), (4)(A)(iv). On February 2, 2024, the district court then issued what it called a "Final Judgment" stating that the parties' cross-motions for summary judgment were each granted in part and denied in part and reiterating the injunction as it was described in the court's March 6, 2023 order. JA443-444. The federal government filed a timely notice of appeal of that Final Judgment on March 5, 2024. JA445; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court in 2022 had authority to adjudicate a statutory claim against the Postal Service based on the theory that exigencies in 2020 required immediate relief.

2. Whether the district court abused its discretion by issuing a prophylactic, permanent injunction.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### I.     Statutory Background

The modern U.S. postal system "serve[s] nearly 167 million addresses in this country" and "retains the largest physical and logistical infrastructure of any non-military government institution."   USPS, *Postal Facts*, https://perma.cc/DQP9-CGWJ.  "Everyone living in the United States and its territories has access to postal products and services and pays the same for a First-Class Mail postage stamp, regardless of location." *Id.*

In 1970, in response to a "growing awareness" that the "vast sprawling postal complex" had become "overburdened" and was "in deep trouble," H.R. Rep. No. 91-1104, at 4 (1970), Congress passed the Postal Reorganization Act, "[t]o improve and modernize" the postal system, Pub. L. No. 91-375, 84 Stat. 719, 719 (1970). The Act "abolished the Post Office Department, which since 1789 had administered the Nation's mails" and established two new entities: "the United States Postal Service" and what was then called the "Postal Rate Commission." *National Ass'n of Greeting Card Publishers v. USPS*, 462 U.S. 810, 813 (1983).

Congress "wished the Postal Service to be run more like a business than had its predecessor, the Post Office Department," *Franchise Tax Bd. v. USPS*, 467 U.S. 512, 519-520 (1984), recognizing that "[d]elivering the mail is simply not in the same category of policymaking and program-development" as other government

6

programs but rather "is an essential, business-oriented service," *National Easter Seal Soc'y for Crippled Children & Adults v. USPS*, 656 F.2d 754, 767 (D.C. Cir. 1981) (quoting 116 Cong. Rec. 21,709 (1970) (statement of Sen. McGee)). Accordingly, Congress established the Postal Service as an independent establishment of the executive branch that acts as "a Government-owned corporation," *USPS v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 122 (1981), and, as relevant here, made the Postal Service "exempt from review under the Administrative Procedure Act," *National Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022); *see* 39 U.S.C. § 410(a); *see also* 116 Cong. Rec. 21,709 (statement of Sen. McGee) ("Laws which are appropriate to governmental management generally, which insure compliance with policies which Congress has determined to be in the best public interest for Government agencies generally, are not the best method of control in the case of the post office.").

Congress also established a new Postal Rate Commission that was empowered to review the Postal Service's rates and fees but was otherwise "limited" in its "authority to exercise oversight over the Postal Service." S. Rep. No. 108-318, at 6 (2004). Congress subsequently expanded the Commission's role by creating a successor Postal Regulatory Commission with "enhanced authority to respond to complaints of pricing, service, or other actions by the Postal Service in violation of law" and "to correct violations by ordering the Postal Service to take whatever steps

the Commission considers appropriate."  H.R. Rep. No. 109-66, at 52 (2005); *see*

Postal Accountability and Enhancement Act, Pub. L. No. 109-435, § 601(a)(1), 120

Stat. 3198, 3238-3239 (2006); 39 U.S.C. § 501.

As particularly relevant here, the statute provides that the Postal Service must

seek an advisory opinion from the Postal Regulatory Commission before

implementing certain proposed changes in service.  The requirement is triggered

"[w]hen the Postal Service determines that there should be a change in the nature of

postal services which will generally affect service on a nationwide or substantially

nationwide basis." 39 U.S.C. § 3661(b).  In such cases, the Postal Service is required

to "submit a proposal" to the Postal Regulatory Commission "requesting an advisory

opinion on the change."  *Id.*  The determination of whether a proposed change

requires seeking an advisory opinion is governed by the criteria set out in the Fifth

Circuit's decision in *Buchanan v. USPS*, 508 F.2d 259, 262-263 (5th Cir. 1975).  *See*

Order Granting Motion to Dismiss Complaint at 17 n.20, *New York*, Docket No.

C2022-1 (Postal Regulatory Comm'n Dec. 17, 2021).[1]  "[T]hree factors must

coexist": (1) "there must be a 'change,'" which requires a "quantitative

determination" that there will be a "meaningful impact on service"; (2) "the change

must be 'in the nature of postal services,'" which requires "a qualitative

examination" demonstrating that "the manner in which postal services available to

---

[1]  https://perma.cc/4A2H-736P

the user will be altered"; and (3) "the change must affect service 'on a nationwide or substantially nationwide basis,'" which requires that a "broad geographical area . . . be involved." *Buchanan*, 508 F.2d at 262-263.

When the Postal Service properly requests an advisory opinion, the Commission provides an opportunity for a hearing at which interested persons, including "users of the mail," may present their views. *See* 39 U.S.C. § 3661(c); *see also* 39 C.F.R. pt. 3020 (rules governing the procedure for requests for advisory opinions). Following a hearing, the Commission issues an opinion "in writing" that "include[s] a certification by each Commissioner agreeing with the opinion that in his judgment the opinion conforms to the policies established under" the statute. 39 U.S.C. § 3661(c). These opinions are, as the statute says, "advisory." *Id.* § 3661(b). "The Postal Service is not required to follow them." *Buchanan*, 508 F.2d at 262.

"Any interested person . . . who believes the Postal Service is not operating in conformance with the requirements of" various provisions in the statute "may lodge a complaint with the Postal Regulatory Commission." 39 U.S.C. § 3662(a). These provisions include the requirement to obtain advisory opinions from the Commission, as well as a range of other requirements largely related to rates and service. *See id.* Within 90 days of the filing of a complaint, the Commission must either "find[] that such complaint raises material issues of fact or law" and "begin proceedings on such complaint" or dismiss the complaint. *Id.* § 3662(b)(1)(A). Any

9

"person, including the Postal Service, adversely affected or aggrieved by a final order or decision" of the Commission "may . . . institute proceedings for review" in this Court. *Id.* § 3663. The postal statute further provides that "[t]he several district courts have jurisdiction specifically to enforce, and to enjoin and restrain the Postal Service from violating, any order issued by the Postal Regulatory Commission." *Id.* § 3664. But it describes no role for district courts in resolving the claims that may be presented to the Commission with review in this Court.

## II.     Procedural History

### A.     Preliminary Injunction Proceedings

**1.** On August 25, 2020, three states (New York, Hawaii, and New Jersey) and two municipalities (New York and San Francisco) filed suit in the District Court for the District of Columbia to challenge what they alleged were operational changes regarding how the Postal Service was processing and delivering mail. JA22-85. Eleven similar suits were filed across the country.[2]

---

[2] *See Jones v. USPS*, No. 1:20-cv-06516 (S.D.N.Y. filed Aug. 17, 2020); *Richardson v. Trump*, No. 1:20-cv-02262 (D.D.C. filed Aug. 17, 2020); *Washington v. Trump*, No. 1:20-cv-03127 (E.D. Wash. filed Aug. 18, 2020); *National Urban League v. DeJoy*, No. 1:20-cv-02391 (D. Md. filed Aug. 18, 2020); *Johnakin v. USPS*, No. 2:20-cv-04055 (E.D. Pa. Aug. 19, 2020); *NAACP v. USPS*, No. 1:20-cv-02295 (D.D.C. filed Aug. 20, 2020); *Pennsylvania v. DeJoy*, No. 2:20-cv-4096 (E.D. Pa. filed Aug. 21, 2020); *Vote Forward. v. DeJoy*, No. 1:20-cv-02405 (D.D.C. filed Aug. 28, 2020); *Harrington v. USPS*, No. 1:20-cv-05303 (N.D. Ill. filed Sept. 8, 2020); *Bullock v. USPS*, No. 4:20-cv-00079 (D. Mont. filed Sept. 8, 2020); *1199SEIU United Healthcare Workers E. v. DeJoy*, No. 1:20-cv-24069 (S.D. Fla. filed Oct. 6, 2020).

The plaintiffs in this case alleged that in June and July 2020, the Postal Service made a number of changes to how it processes and delivers mail, such as removing some collection mailboxes without immediate replacements; removing certain mail-sorting machines; not hiring more workers or authorizing more overtime pay; not permitting as many unscheduled and extra mail trips as would be necessary "to ensure that no mail is left sitting in postal facilities at the end of the day"; cutting back late mail trips; changing the sorting schedules at "384 facilities"; and not treating all election-related mail as First-Class Mail even if it lacks First-Class Mail postage. JA39-46.[3]

Plaintiffs further averred that there were significant slowdowns in mail delivery in the summer of 2020, JA49-57, that some plaintiffs were not receiving mail as quickly as they had previously, JA69-80, and that the slowdowns raised concerns about the operation of mail-in voting in the November 2020 election, JA58-69. Plaintiffs recognized that the alleged slowdowns were taking place during the height of the COVID-19 pandemic and at a time when tens of thousands of

---

[3] Plaintiffs' complaint recognized that in August 2020, the Postal Service suspended some of these changes, stating that "processing equipment and blue collection boxes will remain where they are" and that overtime would be approved "as needed" and that the Postal Service would "deliver[] election mail at the First Class rate speed." JA47-48 (quotation marks omitted). But plaintiffs alleged that the Postal Service was not reassembling and reinstalling "removed sorting machines" and had not "account[ed] for" how efforts to prioritize election-related mail "would play out in practical terms." JA47-48.

"Postal Service employees have needed to quarantine due to COVID-19."  JA43.

Plaintiffs alleged, however, that some combination of the purported changes related

to mail sorting and delivery were causing the slowdowns.  JA49-57; *see also, e.g.*,

JA50-51 (comparing mail slowdowns in late July 2020 and early August 2020 to

"the same period" in 2019).

Plaintiffs brought three claims for relief.  JA80-83.  *First*, they alleged that

the Postal Service failed to seek "an advisory opinion" from the Postal Regulatory

Commission, as required by 39 U.S.C. § 3661, before "implement[ing] nationwide

changes" and that the Postal Service's various changes were "therefore *ultra vires*"

and "should therefore be declared unlawful and enjoined."  JA80-81.  *Second*,

plaintiffs alleged that the Postal Service was not carrying out its general statutory

duties under 39 U.S.C. §§ 101 and 403 to provide prompt and reliable mail service

throughout the country.  JA81.  *Third*, plaintiffs alleged that the Postal Service was

"hinder[ing] the delivery of mail ballots and ballot applications, and thereby

undermin[ing] the States' constitutionally-delegated role to regulate congressional

elections in violation of the Elections Clause."  JA82.

**2.**  On September 2, 2020, plaintiffs moved for a preliminary injunction,

urging that some combination of the past and then-present operational changes

alleged in their complaint were impeding state and local governments' efforts to

respond to the COVID-19 pandemic and threatened to interfere with their ability to

conduct the upcoming election safely and effectively through mail-in voting.  Dkt. No. 12.

The federal government disputed plaintiffs' core factual allegations and urged that plaintiffs were, in any event, unlikely to succeed on the merits because, as particularly relevant here, complaints that the Postal Service had improperly failed to seek an advisory opinion from the Postal Regulatory Commission must be presented to the Commission, with review in this Court under the review scheme established in 39 U.S.C. § 3662.  Dkt. No. 30, at 27-33 (first citing *LeMay v. USPS*, 450 F.3d 797, 799-800 (8th Cir. 2006); then citing *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 986 (Fed. Cir. 2013) (per curiam); and then citing *Bovard v. USPS*, 47 F.3d 1178, 1995 WL 74678 (10th Cir. Feb. 24, 1995) (unpublished table decision)).  The federal government also explained that "*ultra vires* review" is available only where the complaining party has no other, adequate means of vindicating its statutory rights.  Dkt. No. 30, at 31-32.  Because the plaintiffs could bring their § 3661(b) claim through the statutory review scheme, the federal government urged, ultra vires review was unavailable.  *Id.* at 32-33.[4]

---

[4] The federal government also stated that much of what plaintiffs had focused on was a range of years' old, regular, and ongoing efforts to remove or replace redundant collection boxes and processing equipment and to focus on adhering to existing transportation schedules to control costs.  Dkt. No. 30, at 14-21.  The federal government explained that the COVID-19 pandemic had created "significant staffing issues," including a nearly 50% increase in employee leave, and that the

*Continued on next page.*

13

**3.** On September 27, 2020, the federal government notified the district court that the Postal Service had issued "Operational Instructions" "to clarify existing policies and to implement a preliminary injunction" issued "in related litigation." JA86; *see* JA90-94 (instructions); JA96-97 ("Mandatory Stand-Up Talk" summarizing those instructions for postal employees); JA99-101 (further instructions detailing additional resources that would be made available to support the expeditious handling of election-related mail). These instructions clarified that "Postal Service Headquarters has not imposed, and will not impose, any nationwide changes that ban or newly restrict overtime prior to Election Day"; that the Postal Service had "suspended the removal" of "collection boxes" and "sorting machines" and halted closing or consolidating mail processing facilities until after the November 2020 election; that "late or extra trips" were permitted when "reasonably necessary to complete timely mail delivery"; and that the Postal Service would "continue to prioritize Election Mail that is entered as Marketing Mail regardless of the paid class . . . so that it is generally delivered in line with First-Class Mail delivery standards." JA90-93. The instructions also directed Postal Service personnel to dedicate additional processing and transportation resources to election

---

Postal Service was in the process of trying to mitigate those shortages, including by hiring nearly 90,000 new employees. *Id.* at 20-21. The federal government also detailed various efforts to ensure the rapid delivery of election-related mail. *Id.* at 8-13.

mail, including by authorizing extra delivery and collection trips and authorizing overtime pay.  JA99-101.

**4.**  Later that day, on September 27, 2020, the district court entered a preliminary injunction, barring the Postal Service from "enforcing" a range of changes alleged in this case, which the district court referred to as "the Postal Policy Changes."  JA102 (order); *see* JA104-142 (opinion).  The district court described what it viewed as "four changes" in "June and July 2020" in how the Postal Service "collects, processes and delivers mail," JA108: (1) a plan to remove 671 sorting machines from service over several months, JA108; (2) a shift in postal "operations and culture" that would "prohibit[] late trips and extra trips," JA108-109 (quotation marks omitted); (3) a since-halted "pilot project" in "certain cities" that had mail carriers spend the mornings delivering mail rather than sorting mail, JA110; and (4) a practice of treating election-related mail based on how it was mailed, *i.e.*, only guaranteeing "expedited First-Class" shipping to mail with "First Class postage," JA111.

The district court concluded that plaintiffs were likely to succeed on their claim that the Postal Service was required to seek an advisory opinion from the Postal Regulatory Commission under 39 U.S.C. § 3661(b) before making these changes.  JA116-135.  The court concluded that plaintiffs were not required to proceed under the review scheme set out in 39 U.S.C. § 3662.  The district court

15

recognized that other courts had repeatedly held that that the statutory review scheme provides the exclusive route for challenging a failure to abide by the requirements specified in the statute. *See* JA122. The court questioned the correctness of these decisions, emphasizing that the statute provides that "any interested person 'may' lodge a complaint" with the Commission and "'may' file a petition with the D.C. Circuit." JA123 (citing 39 U.S.C. §§ 3662(a), 3663). The court stated that the use of the "permissive 'may'" in § 3662 "suggests" that the statutory review scheme is not the "exclusive avenue" for bringing such a claim. JA123.[5]

The district court, however, ultimately declined to decide whether it was "fairly discernible" that "the statutory scheme . . . preclude[s] district court jurisdiction." JA126; *see* JA124-127. Instead, the court stressed that in determining whether a particular "claim may be reviewed," it must consider whether "there is no other meaningful or adequate avenue for judicial review." JA124 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)). The court stated that the Postal Regulatory Commission "cannot provide immediate relief," and therefore that the plaintiffs would "be denied meaningful review" if they filed a complaint as provided for by statute. JA125. In particular the court stressed that the asserted operational

---

[5] The court also noted legislative history describing the Postal Service's role in providing a "public service" and the requirement "to seek out the needs and desires" of "customers" and provide "justification and review of changes in service." JA124 (quoting H.R. Rep. No. 91-1104, at 3668).

16

changes were impairing the plaintiffs' ability to "provide necessary services" and "provid[e] safe and effective means to vote by mail in the upcoming general election."  JA126 (quoting Plaintiffs' Reply in Support of Motion for Preliminary Injunction, Dkt. No. 40, at 16); *see* JA127.  Because plaintiffs were seeking immediate relief, the court reasoned that they were not trying to "obtain the same relief they could seek in the agency proceeding" and therefore "the relief [p]laintiffs seek cannot be meaningfully redressed through filing a Section 3662 complaint."  JA127 (quotation marks omitted).  The court also rejected the federal government's separate argument about the limits on ultra vires review, stating that the court was "persuaded that [p]laintiffs claim is reviewable."  JA128-129.

The district court went on to conclude that plaintiffs were likely to succeed on their statutory claim that the "Postal Policy Changes" were "change[s] in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis" and therefore required seeking an advisory opinion from the Postal Regulatory Commission.  JA129-135 (quoting 39 U.S.C. § 3661(b)).  In particular, the court relied on statements from a former letter carrier who now represents certain postal workers in labor disputes and was "concerned about whether the U.S. Postal Service will be able to deliver election mail as quickly as it has in the past."  JA132 (quoting Dkt. No. 12-34, at 7).  Based on such statements, the court concluded that the "combin[ed]" effect of the asserted postal changes "put[]

17

the timely delivery of election mail at risk." JA132. The court also found that plaintiffs faced irreparable harms because the asserted changes that had been implemented without first obtaining an advisory opinion or opinions were "impeding" plaintiffs' "ability to combat the spread of a highly contagious and deadly disease" and "their ability to provide safe alternatives to in-person voting." JA138-139.

**5.** Three weeks after the district court issued the preliminary injunction, on October 19, 2020, plaintiffs filed a motion for summary judgment and simultaneously moved for expedited consideration. JA205. Plaintiffs urged that "[s]peedy resolution" was "necessary to ensure that [p]laintiffs' residents are not disenfranchised or denied critical public benefits during this time of economic crisis." JA208. Although plaintiffs had already obtained a preliminary injunction, they stated that an immediate judgment was "necessary to avoid depriving the relief requested of its value by coming too late." JA208. The district court granted plaintiffs' motion to expedite and ordered the federal government to file its opposition to summary judgment and cross-motion for summary judgment by October 26, 2020, with all reply briefing completed by November 2, 2020. JA14 (Oct. 20, 2020 Minute Order).

**B.     October 21, 2020 – September 29, 2022**

**1.**  The Postal Service implemented the preliminary injunctions in this case and others.  The federal government did not pursue appeals.  In the months following the November 2020 election, the eleven other related cases settled or were dismissed.[6]

**2.**  In this case, the preliminary injunction remained in place.  Plaintiffs repeatedly alleged to the district court that the Postal Service was violating that injunction and failing to seek required advisory opinions from the Postal Regulatory Commission.  Increasingly, these allegations no longer concerned the alleged operational changes in the summer of 2020 as to which the Postal Service assertedly should have sought an advisory opinion.

In March 2021, the federal government sought clarification that the "injunction does not prohibit the Postal Service from moving a limited number of

[6] *See 1199SEIU United Healthcare Workers East v. DeJoy*, No. 1:20-cv-24069 (S.D. Fla. voluntarily dismissed Nov. 13, 2020); *Harrington v. USPS*, No. 1:20-cv-05303 (N.D. Ill. voluntarily dismissed Nov. 20, 2020); *Johnakin v. USPS*, No. 2:20-cv-04055 (E.D. Pa. settled Oct. 8, 2020; stipulated dismissal Nov. 25, 2020); *Bullock v. USPS*, No. 4:20-cv-00079 (D. Mont. settled Oct. 14, 2020; stipulated dismissal Nov. 30, 2020); *National Urban League v. DeJoy*, No. 1:20-cv-02391 (D. Md. voluntarily dismissed Dec. 14, 2020); *Richardson  v. Trump*, No. 1:20-cv-02262 (D.D.C. voluntarily dismissed Jan. 21, 2021); *Washington v. Trump*, No. 1:20-cv-03127 (E.D. Wash. voluntarily dismissed Feb. 16, 2021); *Jones v. USPS*, No. 1:20-cv-06516 (S.D.N.Y. settled May 13, 2021); *Vote Forward. v. DeJoy*, No. 1:20-cv-02405 (D.D.C. voluntarily dismissed May 24, 2021); *NAACP v. USPS*, No. 1:20-cv-02295 (D.D.C. settled Dec. 17, 2021); *Pennsylvania v. DeJoy*, No. 2:20-cv-4096 (E.D. Pa. settled May 13, 2022).

mail-processing machines to improve service and accommodate an unprecedented growth in package volume." JA211. The government noted in particular that the Postal Service "urgently" needed to remove "five 'Flats Sequencing System' (FSS) machines" and "replace them with newly purchased machines that sort packages, including medications." JA211. Plaintiffs opposed this clarification, quoting news reports that some people "expected" certain service changes, and stated that a recent appropriations request for $40 billion to be used for "'infrastructure updates' and 'new package sortation equipment'" "suggest[ed] that the Postal Service intends to upend postal operations . . . without going to the PRC." JA234-235.

After briefing, on April 3, 2021, the district court clarified that the Postal Service could remove or replace processing machines in certain circumstances, such as "moving mail-processing machines from facilities where machines are not needed to facilities where machines are needed" and "removing machines that are outdated to make room for newer machines." JA248.

In late April 2021, the federal government notified the district court that the Postal Service had briefly implemented "a new process to centralize and manage vendor selection" related to "extra trips made by third-party suppliers within the Postal Service's surface transportation network." JA250. But in "an abundance of caution," the Postal Service suspended that process and sought clarification that it would not violate the preliminary injunction. JA253; *see* JA267-310 (further motion

for clarification). Plaintiffs opposed the motion to clarify and also filed a motion to enforce the preliminary injunction. JA311-330. Plaintiffs urged that because there were fewer extra trips and delivery speeds had not rebounded, the Postal Service must be violating the injunction, and they further urged that the Postal Service's plans to change how it works with third-party vendors would also violate the injunction. *See* JA314-324.

Several months later, on August 23, 2021, the district court issued an order stating that "the injunction does not prohibit the Postal Service from implementing" the particular "proposed changes" because, among other things, the court did not think those changes "would have a meaningful impact on service that would be felt on a nationwide basis." JA343-344. The court, however, ordered the parties to file a status report "proposing the parameters of a data request" that would catalog "the number of extra trip requests denied" on each of two grounds and to catalog the number of extra trips authorized during the same period. JA346-347; *see* JA17 (August 31, 2021 Minute Order).

**3.** During the roughly two years that the preliminary injunction was in place, plaintiffs did not file a complaint with the Postal Regulatory Commission under 39 U.S.C. § 3661(b) to allege that the Postal Service failed to seek an advisory opinion from the Commission for the 2020 operational changes alleged in their complaint.

C.     **Summary Judgment Rulings**

On September 30, 2022, almost two years after the completion of summary judgment briefing, the district court issued a short order stating that plaintiffs' and the federal government's cross-motions for summary judgment were both "granted in part and denied in part." JA348 (capitalization altered). The order provided no further detail or explanation, stating only that it issued "[f]or the reasons stated in the forthcoming Memorandum Opinion." JA348.

On October 6, 2022, the district court issued an opinion. JA349-413. The court described what it called five "changes and strategies" in mail service in 2020. JA354. *First*, as part of "an initiative started in 2017 to determine the optimum number of machines by running computer models analyzing mail-flow volume," the Postal Service reduced the number of "sorting machines" at a greater "rate[]" than in several prior years but then, in August 2020, "suspended all removals of equipment until after the November 2020 election." JA355. *Second*, in June 2020, at "a teleconference with Area Vice Presidents," attendees were asked to pursue "strategies to reduce, among other things, unearned overtime," and in September 2020, Operational Instructions clarified that overtime "has not been banned" or "cap[ped]." JA355 (quotation marks omitted). *Third*, there was a range of guidance about "late and extra trips"—"trips that depart after their scheduled departure time" and "additional trips that were not originally scheduled"—such as

22

instructions that employees should not "wait[] on mail" or "com[e] back for parcels" and must "captur[e] the downtime," a clarifying guideline that the "focus is to eliminate unplanned extra transportation" and "[t]rips must depart on time," and further clarifying instructions that "late or extra trips that are reasonably necessary to complete timely mail delivery, is not to be unreasonably restricted or prohibited" and "[m]anagers are authorized to use their best business judgment to meet our service commitments." JA356-358, 356 n.2 (fourth alteration in original) (quotation marks omitted). *Fourth*, a July 2020 initiative at certain facilities directed mail carriers to "leave for the street" in the morning rather than "spending time in the morning sorting mail," but that initiative "is no longer in effect." JA358-359. Finally, *fifth*, in July 2020, a Postal Service official flagged for states that if they mailed ballots by Marketing Mail rather than "pay[ing] First Class postage," there was "a risk" that ballots would not arrive with enough time, but in September 2020, the Postal Service instructed that it "will prioritize Election Mail that is entered as Marketing Mail, regardless of the paid class." JA359.

The district court issued summary judgment to plaintiffs on their claim that the Postal Service should have sought an advisory opinion from the Postal Regulatory Commission under 39 U.S.C. § 3661(b) before implementing these 2020 "Postal Policy Changes." JA371-391. The district court held that the statutory mechanism for filing complaints with the Commission and then seeking review in

23

this Court did not preclude plaintiffs from suing in district court instead. JA372-382. The court expressed significant doubt that the statutory review scheme is ever exclusive, *see* JA374-376, stating that "the text of the statute . . . does not indicate that Congress intended the [Postal Reorganization Act] to be the exclusive avenue for bringing complaints," JA375-376. The court noted that § 3662(a) provides that an individual "'may' lodge a complaint" with the Commission and stated that "Section 3662's use of the word 'may'" "suggests" that channeling through the Commission "is permissive." JA374-375. The court stated that "[t]his interpretation is strengthened because the statute also expressly provides" that district courts have jurisdiction "'over all actions brought by or against the Postal Service' unless 'otherwise provided in [title 39].'" JA375 (second alteration in original) (quoting 39 U.S.C. § 409(a)). And, as it did in 2020, the court stated that "[t]he statute's legislative history also does not suggest such a reading," pointing to statements that the "'[t]he postal service is—first, last, and always—a public service'" and must "'seek out the needs and desires of its present and potential customers—the American public.'" JA376 (second alteration in original) (quoting H.R. Rep. No. 91-1104, at 3668). The court noted that contrary decisions of other courts were not "binding." JA377. But the court also appeared to distinguish those cases by finding "significant" a "distinction" between complaints about the statutory requirement to seek advisory opinions from the Postal Regulatory Commission and other

24

complaints about "the adequacy and efficiency of service." JA377-378 (quotation marks omitted).

Nonetheless, as it did in 2020, the court then focused on "whether the claim may be reviewed" in district court "because there is no other meaningful or adequate avenue for judicial review." JA379 (citing *Thunder Basin Coal Co.*, 510 U.S. 200). The court noted that its September 2020 opinion had concluded that requiring plaintiffs to present their claim to the Commission "would deny [p]laintiffs meaningful review." JA380. The court rejected the government's contention that the exigent time frame cited in the preliminary injunction opinion no longer had any bearing on plaintiffs' ability to obtain meaningful review under the prescribed statutory review scheme. JA380-381. The court stated that its "conclusion" in September 2020 "was not limited to election-related injuries" and was also based on the effects of postal slowdowns on plaintiffs' other operations, JA381, but it did not explain why the Commission could not meaningfully review claims of this kind in 2022.

The district court recognized that Congress had expressly precluded APA review of Postal Service actions. The court declared, however, that it could review the Postal Service's alleged failure to seek advisory opinions in 2020 under "the *Ultra Vires* Doctrine." JA382-383, 390-391. The court stated that it had authority to do so because "Section 3661 is a clear and specific statutory mandate" that

25

"plainly delineates the outer limits of agency authority." JA382 (quotation marks omitted). Again citing its September 2020 preliminary injunction decision, the court rejected the federal government's argument that plaintiffs "have a meaningful and adequate means of vindicating [their] statutory rights by filing a complaint with the PRC." JA390-391 (quotation marks omitted). The court referenced back to its view of the facts in September 2020 and stated that "because of the nature of [p]laintiffs' claims and because of the impending general election at the time [p]laintiffs filed suit, forcing [p]laintiffs to raise their claims administratively would not have afforded them meaningful vindication of their right to notice and opportunity to participate" in a Postal Regulatory Commission hearing as part of the process of issuing an advisory opinion. JA391.

The district court went on to hold that, in 2020, the Postal Service should have sought an advisory opinion under 39 U.S.C. § 3661(b) before implementing the five changes described by the court. JA383-391.[7] And the court issued a declaratory judgment and a permanent injunction. JA408-413. The court relied on the fact that in 2020, "[p]laintiffs suffered harm by impeding their ability to combat the spread COVID-19, impeding their ability to provide safe alternatives to in-person voting,

---

[7] The court granted summary judgment to the federal government on plaintiffs' claims that the challenged policy changes violated 39 U.S.C. §§ 101 and 403, and the Elections Clause. JA391-408. Plaintiffs have not cross-appealed, and these are not issue here.

imposing direct financial costs to state and local agencies, and imposing administrative burdens." JA411 (quotation marks omitted). Quoting its 2020 preliminary injunction decision, the court added that it is "in the public interest to mitigate the spread of COVID-19, to ensure safe alternatives to in-person voting, and to require that the USPS comply with the law." JA411 (quoting JA141). The court stated that "simultaneous implementation of multiple policy changes in June and July 2020 contributed to the decline in mail service and the overall confusion by postal workers" but that "changes to and impacts on the USPS transportation schedule regarding late and extra trips were the primary factor in affecting service." JA412. The court "grant[ed] declaratory relief to [p]laintiffs because USPS's steep reduction in late and extra trips in July 2020 violated Section 3661(b) when the agency failed to first seek an advisory opinion from the PRC." JA413. The court stated that "declaratory relief would settle the issues before the parties." JA411. But the court also "enjoin[ed] the Postal Service from prohibiting such trips in total or from curtailing such trips to the extent that nationwide service scores decline on average by more than 10 percentage points for a period of at least two-weeks, without first seeking an advisory opinion from the PRC." JA412-413.

## D.    Denial of Reconsideration and Clarification of the Injunction

The federal government moved to alter or amend the judgment to address a number of ambiguities and the possibility that the Postal Service could

unintentionally violate the injunction if changes that are intended to be minor depress services scores for reasons that were not intended or foreseen and beyond the Postal Service's control. JA416-435. The district court denied the motion but nonetheless "clarified" the permanent injunction. JA437-441. That order:

> enjoin[s] the Postal Service from prohibiting such [late and extra] trips in total or from curtailing such [late and extra] trips following a decline in nationwide service scores by more than 10 percentage points for a period of at least two-weeks, without first seeking an advisory opinion from the [Postal Regulatory Commission] pursuant to 39 U.S.C. § 3661(b). Nationwide service scores are to be measured by the composite score of service performance measurement data on market dominant services.

JA440-441 (some alterations in original).

## SUMMARY OF ARGUMENT

**A.** As relevant here, Congress has limited district court authority to review claims against the Postal Service in two ways. First, Congress explicitly excluded the Postal Service from the scope of the Administrative Procedure Act. Thus, a district court may only adjudicate claims that the Postal Service has violated its governing statute in the exercise of "ultra vires" or "non-statutory" review. This Court has analogized such review to mandamus, and it is available only to enjoin extreme agency error when there is no alternative procedure for reviewing the error. Second, Congress established a statutory scheme in which certain claims against the Postal Service may be presented to the Postal Regulatory Commission with subsequent review in this Court. These include claims that the Postal Service failed

28

to seek an advisory opinion from the Commission, the claim asserted in this case. This comprehensive scheme generally precludes any basis for the exercise of non-statutory review. And court after court has held that it is also a comprehensive review scheme that divests district courts of jurisdiction.

The district court issued a preliminary injunction in September 2020, justifying its exercise of non-statutory authority on the ground that it would be impossible for the Postal Regulatory Commission to grant the requested relief prior to the November 2020 election and at the height of the COVID-19 pandemic. Even assuming that the district court could properly exercise such authority at that time, the rationale for its involvement had ceased well before issuance of the 2022 permanent injunction. The 2020 "Postal Policy Changes" and the COVID-19 and election-related exigencies that were the basis of the complaint and the preliminary injunction had long since been overtaken by events when the district court issued a judgment and permanent injunction in October 2022. The court's 2022 summary judgment opinion cited no exigent circumstances that prevented plaintiffs from obtaining meaningful review of any new alleged missteps from the Commission and this Court. Instead, the district court relied entirely on the reasoning in its 2020 opinion without acknowledging that the asserted premises of that reasoning no longer existed.

29

**B.** The district court compounded its error by issuing a broad, prophylactic injunction governing the Postal Service's future operations and future decisions about whether to seek advisory opinions from the Postal Regulatory Commission. The scope of the injunction vastly exceeds any limited authority to enjoin extreme agency error in clear violation of a statute. And by establishing court-imposed rules to govern future changes in late and extra trips by postal personnel, the injunction displaces the statutory roles of the Postal Service and the Postal Regulatory Commission. The injunction assumes ongoing oversight of the Postal Service with respect to future decisionmaking, even when the Postal Regulatory Commission is fully able to consider a claim that the Postal Service had undertaken actions that required an advisory opinion without seeking the views of the Commission. And the injunction requires the Postal Service to seek advisory opinions even when it has not "determine[d] that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." 39 U.S.C. § 3661(b). The court's order would run afoul of basic principles of equity and administrative law even if review under the APA were available. And it plainly exceeds the scope of relief available under ultra vires review.

## STANDARD OF REVIEW

The district court's entry of summary judgment is reviewed de novo. *Vanda Pharm., Inc. v. FDA*, 123 F.4th 513, 520 (D.C. Cir. 2024). The order granting a

permanent injunction is reviewed for abuse of discretion. *Anatol Zukerman &*

*Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1361 (D.C. Cir. 2023).

## ARGUMENT

## THE SUMMARY JUDGMENT RULING MISTAKENLY ADJUDICATES QUESTIONS PROPERLY RESOLVED BY THE POSTAL REGULATORY COMMISSION AND ALSO EXCEEDS THE PROPER SCOPE OF ULTRA VIRES REVIEW

A.    **The Postal Regulatory Commission, and Not a District Court, Should Determine in the First Instance Whether the Postal Service Failed to Seek an Advisory Opinion from the Commission**

1.  The Postal Reorganization Act and subsequent amendments establish a

review scheme for a range of claims about Postal Service decisionmaking and

eliminate other statutory bases for judicial review of such complaints.  That scheme

reflects Congress's wish that "the Postal Service . . . be run more like a business than

had its predecessor, the Post Office Department." *Franchise Tax Bd. v. USPS*, 467

U.S. 512, 519-520 (1984).  Members explained that "[d]elivering the mail is simply

not in the same category of policymaking and program-development" as other

government programs but rather "is an essential, business-oriented service."

*National Easter Seal Soc'y for Crippled Children & Adults v. USPS*, 656 F.2d 754,

767 (D.C. Cir. 1981) (quoting 116 Cong. Rec. 21,709 (statement of Sen. McGee)).

Congress thus concluded that "[l]aws which are appropriate to governmental

management generally, which insure compliance with policies which Congress has

31

determined to be in the best public interest for Government agencies generally, are not the best method of control in the case of the post office." 116 Cong. Rec. 21,709 (statement of Sen. McGee).

Accordingly, Congress "expressly exempt[ed]" "[t]he actions of the Postal Service . . . from review under the Administrative Procedure Act." *National Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022) (quotation marks omitted); *see* 39 U.S.C. § 410(a). It is therefore not controverted that even when a district court may engage in review of Postal Service decisions for consistency with statutory requirements, it may only conduct "ultra vires review," also known as "non-statutory review." *See National Ass'n of Postal Supervisors*, 26 F.4th at 966. This exercise of non-statutory authority "evolved out of courts' use of their equitable jurisdiction to enjoin illegal agency action," 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8307 (2d ed.), and "the resulting judicial task mimic[s] that appropriate in mandamus actions," *National Ass'n of Postal Supervisors v. USPS*, 602 F.2d 420, 432 (D.C. Cir. 1979). A court may therefore act only where "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Federal Express Corp. v.*

32

*U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) (quotation marks omitted).

Congress did, however, establish a separate means of channeling a range of complaints through the expert Postal Regulatory Commission. Any "interested person . . . who believes the Postal Service is not operating in conformance with" various statutory requirements listed in 39 U.S.C. § 3662(a)—including the requirement to obtain an advisory opinion from the Commission for certain changes in mail service—"may lodge a complaint with the Postal Regulatory Commission." 39 U.S.C. § 3662(a). Any "person, including the Postal Service, adversely affected or aggrieved by a final order or decision" of the Commission "may . . . institute proceedings for review" in this Court. *Id.* § 3663.

Congress gave district courts "jurisdiction specifically to enforce, and to enjoin and restrain the Postal Service from violating, any order issued by the Postal Regulatory Commission." 39 U.S.C. § 3664. But it provided no role for district courts in adjudicating the issues that may instead be presented to the Postal Regulatory Commission, with subsequent review in this Court. This statutory review scheme is an "alternative procedure for review" that precludes a district court from engaging in non-statutory review. *Federal Express*, 39 F.4th at 763-764. And court after court has also held that it is "a comprehensive review process . . . [that] oust[s] district courts of jurisdiction" over claims that may be presented to the

33

Commission. *Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 186 (2023) (quotation marks omitted) (describing the general principle); *see, e.g.*, *White v. U.S. Post Office*, No. 23-1239, 2024 WL 2973705, at *2-3 (10th Cir. June 13, 2024); *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 985-986 (Fed. Cir. 2013) (per curiam); *Erickson v. U.S. Post Office,* 250 F. App'x 757, 757-758 (8th Cir. 2007); *LeMay v. USPS*, 450 F.3d 797, 799-801 (8th Cir. 2006); *Bovard v. U.S. Post Office*, 47 F.3d 1178, 1995 WL 74678 (10th Cir. Feb. 24, 1995) (unpublished table decision); *see also Pep-Wku, LLC v. USPS*, No. 20-cv-00009, 2020 WL 2090514, at *2 (W.D. Ky. Apr. 30, 2020) (collecting additional cases).

**2.** Even assuming that the district court could issue a preliminary injunction in September 2020 consistent with these principles, it had no authority to issue a permanent injunction two years later. The postal statute establishes a detailed review scheme for the statutory claim at issue here. In concluding that it could nevertheless issue a preliminary injunction in 2020, the district court emphasized its belief that there was an immediate and urgent harm that could not be addressed by the Postal Regulatory Commission. *See* JA125-127. The court stressed that the asserted operational changes were impairing the plaintiffs' ability to "provide necessary services" and "provid[e] safe and effective means to vote by mail in the upcoming general election." JA126; *see* JA127. The court stated that the Commission "cannot provide immediate relief" and therefore that the plaintiffs could not obtain

34

meaningful consideration of their claim through the statutory review procedure. JA125; *see also* JA127 (reasoning that plaintiffs were not trying to "'obtain the same relief they could seek in the agency proceeding'" and "the relief [p]laintiffs seek cannot be meaningfully redressed through filing a Section 3662 complaint"). Plaintiffs reiterated the same theme in October 2020 in moving for expedited resolution of summary judgment motions. They urged that "widespread mail delays" were "'impeding'" their response to "'a highly contagious and deadly disease'" and "their ability to provide safe alternatives to in-person voting" and that an immediate judgment was "necessary to avoid depriving the relief requested of its value by coming too late." JA208 (quoting JA138-139).

No such concerns existed when the court issued a judgment and permanent injunction in October 2022. The 2020 "Postal Policy Changes" and the COVID-19 and election-related exigencies that were the basis of the complaint, the preliminary injunction, and the final injunction, had long since been overtaken by events. But if plaintiffs believed otherwise, they had ample opportunity to pursue a claim before the Postal Regulatory Commission with respect to the Postal Service's actions in 2020 or actions in subsequent years, including with respect to any alleged failure to

35

obtain an advisory opinion from the Commission.[8]   And if plaintiffs were not satisfied with the Commission's decision, they could then seek review in this Court.

Where, as here, the statutory scheme established by Congress can provide meaningful review, there can be no basis for non-statutory review. *Federal Express*, 39 F.4th at 763-764; *see Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (authorizing review where the challengers had "no other means, within their control . . . to protect and enforce th[eir] right"); *Board of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 43 (1991) (stressing that "central" to the Supreme Court's decision in *Kyne* was that the challenger would otherwise be "wholly deprive[d]" of "a meaningful and adequate means of vindicating its statutory rights"); *see also Thompson v. Allen County*, 115 U.S. 550, 554 (1885) (stating that no equity jurisdiction exists when there is an "adequate remedy at law").   And in such circumstances, "preclusion of district court jurisdiction" would not "'foreclose all meaningful judicial review'" because a claim could be presented to this Court following a decision by the Commission. *See Axon*, 598 U.S. at 190-191 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-213 (1994)); *see also id.*

---

[8] In fact, two of the plaintiffs filed a complaint with the Postal Regulatory Commission alleging that the Postal Service had failed to seek an advisory opinion from the Commission before undertaking certain other service changes. *See* Complaint Regarding United States Postal Service Violation of 39 U.S.C. § 3661(b), *New York*, Docket No. C2022-1 (Postal Regulatory Comm'n Oct. 7, 2021) (order granting motion to dismiss issued Dec. 17, 2021), https://perma.cc/7P8A-GMUX.

at 190-191 (adding that a "here-and-now injury" is a key factor in deciding whether "a district court's involvement" is necessary to avoid "foreclos[ing] all meaningful review" (quotation marks omitted)).

**3.**  The district court's summary judgment opinion in 2022 cited no exigent circumstances that prevented plaintiffs from obtaining meaningful review of their statutory claim before the Postal Regulatory Commission and this Court.  Instead, the court relied entirely on the reasoning in its 2020 opinion, stating that "because of the nature of [p]laintiffs' claims and because of the impending general election at the time [p]laintiffs filed suit, forcing [p]laintiffs to raise their claims administratively would not have afforded them meaningful vindication of their right to notice and opportunity to participate as required under Section 3661(b) in a timely manner."  JA391.  The court recognized that the election had taken place two years previously but stated that its 2020 analysis "was not limited to election-related injuries" and was also based on the effects of postal slowdowns on plaintiffs' other operations.  JA381.

None of this provides any support for the premise that the statutory review scheme prescribed by Congress would fail to provide meaningful review years after the events giving rise to the suit, or otherwise permit indefinite judicial oversight in a purported exercise of "ultra vires" review.  Nor did the court explain how a state of affairs that existed two years previously could meet the "demanding standard for

judicial intervention" under which courts are "confined" to addressing only those "extreme" errors that "warrant the immediate intervention of an equity court," *Federal Express*, 39 F.4th at 764-765 (quotation marks omitted).

The district court's willingness to exercise its authority in this manner may have reflected its views about whether the statutory review scheme ever provides the exclusive route of review for matters listed in 39 U.S.C. § 3662(a). *See* JA372-379. The court's conclusions on that issue are not entirely clear, have no bearing on the court's authority to engage in non-statutory review, and also misunderstand the statutory scheme.

It is unclear whether and to what extent the district court concluded that the statutory review scheme never divests district courts of jurisdiction. The court stressed that the statute provides that "any interested person 'may' lodge a complaint" with the Postal Regulatory Commission and "'may' file a petition with the D.C. Circuit," and that the use of the permissive "may" in § 3662 "*suggests*" that the statutory review scheme is not the "exclusive avenue" for bringing a claim that may be presented to the Commission. JA374 (emphasis added); *see also* JA374 (stating that the "use of the mandatory 'shall' elsewhere in the statute *further suggests*" as much (emphasis added)). Elsewhere, the court appeared to accept that the statutory review scheme divests district courts of jurisdiction over many claims that may be presented to the Commission, but the court found "significant" a

"distinction" between complaints about "the adequacy and efficiency of service" and complaints about the statutory requirement to seek advisory opinions regarding mail service.  JA377-378 (quotation marks omitted).

In all events, even if this statutory scheme does not divest a district court of jurisdiction, *see Axon*, 598 U.S. at 185-186, it also does not override Congress's decision to exempt the Postal Service from APA review.  As noted, the district court could conduct ultra vires review only if there were "no alternative procedure for review of the statutory claim" at issue.  *Federal Express*, 39 F.4th at 763; *see also National Ass'n of Postal Supervisors*, 602 F.2d at 432 ("[T]he resulting judicial task mimic[s] that appropriate in mandamus actions.").  The district court gave no reason that the procedure for filing a complaint with the Postal Regulatory Commission, with subsequent review in this Court, is not "an alternative procedure for review."

The district court's observations also misapprehend the statutory review scheme.  The postal statute establishes a comprehensive framework of administrative and judicial review and provides that "[a]ny interested person . . . who believes the Postal Service is not operating in conformance with" specified statutory requirements "may lodge a complaint with the Postal Regulatory Commission" and that aggrieved persons "may" file a petition for review in this Court.  39 U.S.C. §§ 3662-3663.  Indeed, the statute recognizes that generally "district courts shall have original but not exclusive jurisdiction over all actions brought by or against the

39

Postal Service" "[e]xcept as otherwise provided in this title." *Id.* § 409(a). Section 3662 expressly provides otherwise for specified complaints. The district court's statements about the statute's "use of the word 'may,'" JA374-375, thus get matters exactly backwards. The word "may" provides how a person can file a complaint if he or she chooses to do so. *See* 39 U.S.C. § 3662(a) (providing that "[a]ny interested person . . . who believes the Postal Service is not operating in conformance with" specified statutory requirements "may lodge a complaint with the [Commission]"); *id.* § 3663 (providing that aggrieved persons "may" file a petition for review in this Court). It thus serves "to limit" the manner and circumstances where an action may occur (while, of course, recognizing that a party is not required to take that action). *Humphrey's Executor v. United States*, 295 U.S. 602, 626 (1935) (interpreting provision that officer "may" be removed for cause); *see PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 78 (D.C. Cir. 2018) (en banc) (same), *abrogated on other grounds by Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020).[9]

---

[9] Statutes channeling review in a particular court or agency commonly use permissive phrasing to indicate how a party may challenge an agency decision. The permissive word "may" simply communicates the obvious point that the *decision* regarding whether to seek review is optional, even though the *path* of potential review is not. For instance, the statutory scheme at issue in *Thunder Basin* provides that "[a]ny person . . . aggrieved by a decision of an administrative law judge, *may* file and serve a petition for discretionary review by the [Federal Mine Safety and Health Review] Commission." 30 U.S.C. § 823(d)(2)(A)(i) (emphasis added). The

*Continued on next page.*

40

Other indicia underscore that plaintiffs' claim was "of the type Congress intended to be reviewed within" § 3662's "statutory structure." *Axon*, 598 U.S. at 186 (quotation marks omitted). The legislative history of the original scheme, established in 1970, suggests Congress's intent "to minimize external intrusions on the Postal Service's managerial independence." *LeMay*, 450 F.3d at 800. And claims that the Postal Service has not complied with statutes and regulations related to rates and service fall directly into "the statute's review provisions" and the Postal Regulatory Commission's "expertise." *Axon*, 598 U.S. at 186, 194-195 (alteration and quotation marks omitted); *see* H.R. Rep. No. 109-66, at 52 (confirming that Congress gave the Commission "enhanced authority to respond to complaints of pricing, service, or other actions by the Postal Service in violation of law" and "to correct violations by ordering the Postal Service to take whatever steps the Commission considers appropriate").

---

Supreme Court did not focus narrowly on the word "may," but instead looked to the "comprehensive enforcement structure" of the statute as a whole to conclude that Congress had precluded district court review. *Thunder Basin Coal Co.*, 510 U.S. at 216. The same is true of the statutory scheme that the Supreme Court found to preclude district court jurisdiction in *Elgin v. Department of the Treasury*, 567 U.S. 1, 12-13 (2012) ("[A]ny employee adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board *may* obtain judicial review of the order or decision in the Federal Circuit." (emphasis added) (alteration omitted) (quoting 5 U.S.C. § 7703(a)(1))). *See also, e.g.*, 28 U.S.C. § 569(a) ("An individual denied reemployment under this section in a position because the individual is not qualified for that position *may* appeal that denial to the Merit Systems Protection Board under section 7701 of title 5." (emphasis added)).

41

Indeed, contrary to the district court's reference to a possible "distinction" between claims of the type at issue here and claims about other statutory requirements, the Postal Regulatory Commission is uniquely positioned to decide whether the Postal Service should have sought an advisory opinion from the Commission. Such a claim is far from "wholly collateral to the statute's review provisions," and it falls directly in the Commission's "expertise." *Axon*, 598 U.S. at 186 (alteration and quotation marks omitted). Whether the Postal Service must seek an advisory opinion under given circumstances is a routine issue normally adjudicated by the Commission.[10] A favorable decision from the Commission might avoid any court having to pass upon the fact-bound and technical question whether a postal policy constitutes "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," 39 U.S.C. § 3661(b); *see Buchanan v. USPS*, 508 F.2d 259, 263 (5th Cir. 1975)

---

[10] *See, e.g.*, *New York*, Docket No. C2022-1 (Postal Regulatory Comm'n initiated Oct. 7, 2021) (order granting motion to dismiss issued Dec. 17, 2021), https://perma.cc/2A8X-3WSU; *Changes in Retail Hours*, Docket No. C2014-1 (Postal Regulatory Comm'n initiated Apr. 30, 2014) (order dismissing complaint issued July 28, 2014), https://perma.cc/S5MN-LQ7X; *Associated Mail and Parcel Centers*, Docket No. C2012-1 (Postal Regulatory Comm'n initiated Mar. 15, 2012) (order granting motion to dismiss in pertinent part issued June 13, 2012), https://perma.cc/FXH9-A629; *see also Public Inquiry on Changes Associated with the Delivering for America Plan*, Docket No. PI2023-4 (Postal Regulatory Comm'n initiated Apr. 20, 2023) (order issued April 26, 2024, sua sponte directing the Postal Service to show cause why an advisory opinion is not warranted or to request an advisory opinion), https://perma.cc/C9W6-4PAW.

(describing the "three factors" that bear on that determination). *Cf. Elgin v. Department of the Treasury*, 567 U.S. 1, 23 (2012) ("The [agency]'s resolution of those claims in the [petitioners'] favor might fully dispose of the case."). If nothing else, the Commission's determination may narrow or focus any issues that this Court may eventually need to decide.

## B.   The District Court's Prophylactic Injunction Wrongly Usurps the Role of the Postal Regulatory Commission

The district court compounded its error by issuing a broad, prophylactic injunction governing the Postal Service's future operations and future decisions about whether to seek advisory opinions from the Postal Regulatory Commission. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Even when a party "has suffered an injury sufficient to confer standing to seek injunctive relief, that does not necessarily make injunctive relief appropriate." *Anatol Zukerman & Charles Krause Reporting, LLC v. USPS*, 64 F.4th 1354, 1363 (D.C. Cir. 2023). The district court's assumption of ongoing oversight of the Postal Service would be highly questionable even if review under the APA were available. And it plainly exceeds the scope of ultra vires review.

Courts engaging in ultra vires review exercise narrow authority to issue "injunctive relief against agency action taken in excess of [the agency's] delegated powers and contrary to a specific prohibition in the law." *Federal Express*, 39 F.4th

43

at 763 (quotation marks omitted); *see National Ass'n of Postal Supervisors*, 26 F.4th at 970 ("Review for *ultra vires* acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief." (alterations and quotation marks omitted)).  This "judicial task mimic[s] that appropriate in mandamus actions." *National Ass'n of Postal Supervisors*, 602 F.2d at 432.  Non-statutory review is thus a limited form of "judicial intervention" that may be used to address "extreme agency error" that "warrant[s] the immediate intervention of an equity court." *Federal Express*, 39 F.4th at 763-765 (quotation marks omitted).

The district court's permanent injunction departs from these principles in all respects.  By the time the injunction issued in 2022, the alleged changes that gave rise to the lawsuit and which the district court cited as the basis for its exercise of ultra vires review had long been overtaken by events.  The district court nevertheless crafted new prospective relief—which the plaintiffs had not requested.  When plaintiffs moved for summary judgment in October 2020, they asked the district court to "enjoin Defendants . . . from implementing, applying, or taking any action whatsoever under the Postal Policy Changes," JA143, *i.e.*, the "five operational changes" alleged in their complaint, JA161; *accord* JA146 (proposed order); *see*

44

JA200-202 (arguing for "targeted injunctive relief to redress the serious harms imposed by the Postal Policy Changes").

Although the operational changes had been overtaken by events by the time that the district court ruled on the summary judgment motion, the court proceeded to craft new prospective relief, barring any reduction of late and extra trips "following a decline in nationwide service scores by more than 10 percentage points for a period of at least two-weeks, without first seeking an advisory opinion." JA440-441.  For the reasons discussed above, the court's rationale for engaging in non-statutory review in 2020 had no applicability to circumstances two years year, and the injunction underscores the extent to which the court exceeded the bounds of that limited review.  The Postal Service practices alleged in the complaint, plaintiffs' summary judgment motion, and the court's preliminary injunction opinion were not in place when the final injunction issued.  And even if a court engaging in ultra vires review in 2022 could have enjoined the since-halted 2020 "Postal Policy Changes"—the only kind of injunction authorized under the exercise of ultra vires review—this final, permanent injunction purports to set prospective standards for hypothetical future circumstances that may not require obtaining an advisory opinion under § 3661(b) and where "immediate intervention" by a district court may, in any event, not be necessary.  The final injunction therefore exceeds the district court's authority several times over.

45

For one thing, there was no sound reason to conclude that, in the circumstances contemplated by the injunction, the Postal Regulatory Commission would be unable to consider a claim that the Postal Service had undertaken actions that required an advisory opinion without seeking the views of the Commission. The district court provided no reason that the Commission and this Court could not address such a complaint through the statutory complaint scheme, which is an "alternative procedure for review." *Federal Express*, 24 F.4th at 763. The final injunction also assumes ongoing oversight of the Postal Service, governing speculative *future* circumstances that certainly do not "warrant the *immediate* intervention of an equity court." *Id.* at 764 (emphasis added).

The injunction also alters the statutory scheme without legal or practical justification. Ultra vires review is "confined to 'extreme' agency error" where the agency has acted "clearly in defiance" of a statutory command. *Federal Express*, 39 F.4th at 764. The injunction instead establishes non-statutory standards for when the Postal Service must seek advisory opinions, imposing a novel mandate that the Postal Service seek such opinions before curtailing late and extra trips after there has already been a decline in nationwide service scores—regardless of the reason for the decline. *See* JA440-441.

In crafting this prophylactic relief, the district court displaces the statutory roles of the Postal Service and the Postal Regulatory Commission. Under the statute,

46

the Postal Service must make fact-specific judgments about whether it intends to make "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," 39 U.S.C. § 3661(b), which even were the APA applicable, would have to be reviewed on their own terms under an arbitrary and capricious standard. *Cf. Department of Transp. v. Public Citizen*, 541 U.S. 752, 763 (2004) (describing the deferential arbitrary and capricious review of agency decisions about when to conduct environmental impact studies). The statute calls for action by the Commission only if the Postal Service seeks an advisory opinion or an interested party asks the Commission to determine whether the Postal Service should have done so. Nothing in the statute or principles of ultra vires review authorizes a district court to pretermit these procedures by announcing prospective non-statutory standards mandating advisory opinions by the Commission. Even when judicial review is not limited by ultra vires principles, it is axiomatic that when a "law entrusts [an] agency" to make a decision, "a judicial judgment cannot be made to do service for an administrative judgment," and a court cannot "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Immigration & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quotation marks omitted). The district court turned this statutory scheme on its head by establishing a court-imposed set of rules to supplant the Postal Service's and Postal Regulatory Commission's fact-specific

47

and expert judgments.  *See Cobell v. Kempthorne*, 455 F.3d 301, 317 (D.C. Cir. 2006) ("A court cannot order programmatic supervision of an agency's operations, nor can it displace an agency as the actor with primary responsibility for carrying out a statutory mandate . . . .").

Even apart from these fundamental defects, the injunction departs from the statutory standards for seeking an advisory opinion.  *See* 39 U.S.C. § 3661(b).  The court-established standards are far from clear.  *See* Fed. R. Civ. P. 65(d)(1)(B)-(C) (requiring that an injunction "state its terms specifically[ and] . . . describe in reasonable detail . . .  the act or acts restrained or required").  The injunction, as clarified, does not specify how long the advisory opinion requirement lasts "following a decline in nationwide service scores by more than 10 percentage points for a period of at least two-weeks," JA440-441; whether scores rebounding would affect the bar; or whether the bar applies even if the Postal Service had already sought an advisory opinion with respect to the action that caused the 10% decline.

But it is clear that the injunction diverges from the statutory standard, and that in crafting broad, prophylactic relief, the district court enjoined the Postal Service from taking actions that would not actually violate the postal statute.  The Postal Regulatory Commission has never suggested that the requirement to seek an advisory opinion turns on whether mail deliveries slow for two weeks, whether by the arbitrarily chosen figure of 10% or some other figure.  Indeed, the injunction

requires advisory opinions for actions that might not have "substantially nationwide" impact, or that might not affect "postal services" for users at all. 39 U.S.C. § 3661(b). It prohibits reductions in late and extra trips following declines in nationwide service scores outside the Postal Service's control (for example, due to a natural disaster). And it prohibits reductions in late and extra trips even in circumstances where the reductions might be necessary to respond to mail slowdowns—such as responding to a trucking shortage by reconfiguring the use of Postal Service trucks for late and extra trips to maximize the amount of mail that can be carried by the limited number of available trucks.

Finally, the injunction would run afoul of basic principles of equity even if the court was not limited to ultra vires review. Certainly by October 2022—when the asserted operational changes were no longer at issue, the COVID-19 pandemic had changed significantly, and the Postal Regulatory Commission could adjudicate any complaints—"a less drastic remedy . . . was sufficient to redress [plaintiff]s' injury." *Monsanto*, 561 U.S. at 165-166; *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). The district court's judicial prophylaxis also violates the cardinal principle that equitable orders should be "limited" and "tailored" to redress the parties' "particular injury," *Gill v. Whitford*, 585 U.S. 48, 68, 73 (2018), and must "be no more burdensome to the

defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  And the injunction's disregard of the statutory scheme also violates that cardinal principle that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation."  *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (quotation marks omitted).

## CONCLUSION

The judgment of the district court should be vacated or, in the alternative, the permanent injunction should be vacated.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MARK B. STERN
ADAM C. JED
 */s/ McKaye L. Neumeister*
MCKAYE L. NEUMEISTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7231*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *202-514-8100*
  *McKaye.L.Neumeister@usdoj.gov*

JANUARY 2025

50

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,960 words according to the count of Microsoft Word. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ McKaye L. Neumeister*
McKAYE L. NEUMEISTER

**ADDENDUM**

## TABLE OF CONTENTS

39 U.S.C. § 409(a) ........................................................................................A1

39 U.S.C. § 410(a) ........................................................................................A1

39 U.S.C. § 3661 ...........................................................................................A1

39 U.S.C. § 3662 ...........................................................................................A2

39 U.S.C. § 3663 ...........................................................................................A3

39 U.S.C. § 3664 ...........................................................................................A3

**39 U.S.C. § 409**

**§ 409. Suits by and against the Postal Service**

(a) Except as otherwise provided in this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28.

\* \* \* \*


**39 U.S.C. § 410**

**§ 410. Application of other laws**

(a) Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

\* \* \* \*


**39 U.S.C. § 3661**

**§ 3661. Postal services**

(a) The Postal Service shall develop and promote adequate and efficient postal services.

(b) When the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time prior to the effective date of such proposal, to the Postal Regulatory Commission requesting an advisory opinion on the change.

(c) The Commission shall not issue its opinion on any proposal until an opportunity for hearing on the record under sections 556 and 557 of title 5 has been accorded to the Postal Service, users of the mail, and an officer of the Commission who shall be required to represent the interests of the general public. The opinion shall be in writing and shall include a certification by each Commissioner agreeing with the opinion that in his judgment the opinion conforms to the policies established under this title.

A1

**39 U.S.C. § 3662**

**§ 3662. Rate and service complaints**

(a) In general.--Any interested person (including an officer of the Postal Regulatory Commission representing the interests of the general public) who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601, or this chapter (or regulations promulgated under any of those provisions) may lodge a complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe.

(b) Prompt response required.—

(1) In general.--The Postal Regulatory Commission shall, within 90 days after receiving a complaint under subsection (a)--

(A) either--

(i) upon a finding that such complaint raises material issues of fact or law, begin proceedings on such complaint; or

(ii) issue an order dismissing the complaint; and

(B) with respect to any action taken under subparagraph (A) (i) or (ii), issue a written statement setting forth the bases of its determination.

(2) Treatment of complaints not timely acted on.--For purposes of section 3663, any complaint under subsection (a) on which the Commission fails to act in the time and manner required by paragraph (1) shall be treated in the same way as if it had been dismissed pursuant to an order issued by the Commission on the last day allowable for the issuance of such order under paragraph (1).

(c) Action required if complaint found to be justified.--If the Postal Regulatory Commission finds the complaint to be justified, it shall order that the Postal Service take such action as the Commission considers appropriate in order to achieve compliance with the applicable requirements and to remedy the effects of any noncompliance (such as ordering unlawful rates to be adjusted to lawful levels, ordering the cancellation of market tests, ordering the Postal Service to discontinue providing loss-making products, or requiring the Postal Service to make up for revenue shortfalls in competitive products).

(d) Authority to order fines in cases of deliberate noncompliance.--In addition, in cases of deliberate noncompliance by the Postal Service with the requirements of this title, the Postal Regulatory Commission may order, based on the nature,

A2

circumstances, extent, and seriousness of the noncompliance, a fine (in the amount specified by the Commission in its order) for each incidence of noncompliance. Fines resulting from the provision of competitive products shall be paid from the Competitive Products Fund established in section 2011. All receipts from fines imposed under this subsection shall be deposited in the general fund of the Treasury of the United States.

### 39 U.S.C. § 3663

### § 3663. Appellate review

A person, including the Postal Service, adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may, within 30 days after such order or decision becomes final, institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia. The court shall review the order or decision in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, on the basis of the record before the Commission.

### 39 U.S.C. § 3664

### § 3664. Enforcement of orders

The several district courts have jurisdiction specifically to enforce, and to enjoin and restrain the Postal Service from violating, any order issued by the Postal Regulatory Commission.

A3