# United States Court of Appeals for the District of Columbia Circuit

STATE OF NEW YORK, STATE OF HAWAII, STATE OF NEW JERSEY, CITY OF NEW YORK, CITY AND COUNTY OF SAN FRANCISCO,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, in his official capacity as the President of the United States, DOUG TULINO,* in his official capacity as the Acting Postmaster General of the United States, UNITED STATES POSTAL SERVICE,

*Defendants-Appellants.*

(*Substitution pursuant to Rule 43(c)(2).*)

On Appeal from the United States District Court
for the District of Columbia

## BRIEF FOR APPELLEES

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
KWAME N. AKOSAH
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY 10005
(212) 416-8025

Dated: June 3, 2025

(*Additional counsel listed on signature pages.*)

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF NEW YORK, STATE OF HAWAII,
STATE OF NEW JERSEY, CITY OF NEW YORK,
CITY AND COUNTY OF SAN FRANCISCO,

      *Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as the
President of the United States, DOUG TULINO, in
his official capacity as the Acting Postmaster
General of the United States; UNITED STATES
POSTAL SERVICE,

      *Defendants-Appellants*.

Nos. 23-5103,
24-5047

## CERTIFICATE AS TO PARTIES

Pursuant to D.C. Circuit Rule 28(a)(1), plaintiffs-appellees the State of New York, the State of Hawai'i, the State of New Jersey, the City of New York, and the City and County of San Francisco certify as follows:

## A.    Parties and Amici

The plaintiffs-appellees are the State of New York, the State of Hawai'i, the State of New Jersey, the City of New York, and the City and County of San Francisco.

The defendants-appellants are Donald J. Trump, in his official capacity as the President of the United States; Doug Tulino, in his official

capacity as the Acting Postmaster General of the United States; and the United States Postal Service.

The parties in this Court are the same offices as the parties in the district court. The names of some officials (Trump and Tulino) have been substituted.

As of the date of this filing, no intervenors have appeared in this Court or the district court. As of the date of this filing, no amicus curiae has appeared in this Court. The amici in the district court are:

- **Members of Congress as amici curiae**. Richard Blumenthal, Senator of Connecticut; Cory A. Booker, Senator of New Jersey; Sherrod Brown, Senator of Ohio; Tom Carper, Senator of Delaware; Mazie K. Hirono, Senator of Hawaiʻi; Amy Klobuchar, Senator of Minnesota; Edward J. Markey, Senator of Massachusetts; Jeffrey A. Merkley, Senator of Oregon; Jack Reed, Senator of Rhode Island; Bernard Sanders, Senator of Vermont; Jeanne Shaheen, Senator of New Hampshire; Elizabeth Warren, Senator of Massachusetts; Sheldon Whitehouse, Senator of Rhode Island; Ron Wyden, Senator of Oregon.

- **Thirty-two local and tribal governments as amici curiae.** City of Alameda, California; City of Atlanta, Georgia; City of Austin, Texas; City of Berkeley, California; City of Boston, Massachusetts; City of Cambridge, Massachusetts; City of Chicago, Illinois; City of Cincinnati, Ohio; City of Columbus, Ohio; City of Dayton, Ohio; City of East Palo Alto, California; City of Flint, Michigan; City of Gary, Indiana; City of Houston, Texas; City of Los Angeles, California; City of Madison, Wisconsin; City of Oakland, California; City of Philadelphia, Pennsylvania; City of Pittsburgh, Pennsylvania; City of Portland, Oregon; City of Saint Paul, Minnesota; City of Santa Cruz, California; City of Seattle, Washington; City of Somerville, Massachusetts; City of West Hollywood, California; Cook County, Illinois; County of Los Angeles, California; County of Monterey, California; County of Santa Clara, California; Harris County, Texas; Marin County, California; Yurok Tribe.
- The United States House of Representatives as amicus curiae.
- Brady and Team ENOUGH as amici curiae.

Respectfully submitted,

**LETITIA JAMES**
*Attorney General*
*State of New York*

By:    */s/Kwame N. Akosah*
     KWAME N. AKOSAH
     Assistant Solicitor General

Barbara D. Underwood
   *Solicitor General*
Ester Murdukhayeva
   *Deputy Solicitor General*
Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8025
Kwame.Akosah@ag.ny.gov
*Attorneys for State of New York*

Lori N. Tanigawa
   *Deputy Attorney General*
Department of
   the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1282
lori.n.tanigawa@hawaii.gov
*Attorney for State of Hawaiʻi*

Justine M. Longa
Andrew H. Yang
   *Deputy Attorneys General*
Office of the Attorney General
Division of Law
25 Market Street
Trenton, NJ 08625
(609) 376-3377
justine.longa@law.njoag.gov
andrew.yang@law.njoag.gov
*Attorneys for State of New Jersey*

*(Counsel listing continues on next page.)*

4

MacKenzie Fillow
  *Assistant Corporation Counsel*
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-4378
mfillow@law.nyc.gov
*Attorney for City of New York*

David Chiu
  *City Attorney*
City Attorney's Office of
San Francisco
One Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, CA 94102-0000
(415) 554-4700
luis.zamora@sfcityatty.org
*Attorney for City and*
  *County of San Francisco*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

PRELIMINARY STATEMENT ............................................................. 1

JURISDICTIONAL STATEMENT ........................................................ 3

STATEMENT OF ISSUES ................................................................... 4

PERTINENT STATUTES .................................................................... 4

STATEMENT OF THE CASE .............................................................. 4

    A.   Statutory Background ............................................. 4

    B.   Factual Background ................................................ 7

    C.   Procedural History ............................................... 12

    D.   The District Court's Summary Judgment Decision ............... 14

SUMMARY OF ARGUMENT ............................................................ 17

STANDARD OF REVIEW.................................................................. 20

ARGUMENT ................................................................................... 21

POINT I

THE DISTRICT COURT PROPERLY EXERCISED JUDICIAL
REVIEW OVER THE POSTAL SERVICE'S UNLAWFUL
CHANGES TO NATIONWIDE MAIL SERVICE............................................. 21

    A.   The Postal Statutes Do Not Preclude Judicial Review.......... 23

    B.   Section 3662's Administrative Review Process
         Does Not Provide Meaningful and Adequate
         Means of Vindicating Plaintiffs' Rights.................................. 26

POINT II

    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
    IN ENTERING THE PERMANENT INJUNCTION ......................................... 31

CONCLUSION ......................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Aid Ass'n for Lutherans v. U.S. Postal Serv.,*
    321 F.3d 1166 (D.C. Cir. 2003) ......................................... 21

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S.*
    *Postal Serv.,*
    64 F.4th 1354 (D.C. Cir. 2023) .................................... 20, 31

*Arent v. Shalala,*
    70 F.3d 610 (D.C. Cir. 1995) ............................................. 30

*Board of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
    502 U.S. 32 (1991) ................................................ 18, 22, 26

*Bowen v. Michigan Acad. of Fam. Physicians,*
    476 U.S. 667 (1986) ......................................................... 21

*Buchanan v. U.S. Postal Serv.,*
    508 F.2d 259 (5th Cir. 1975) ............................................ 34

*Chamber of Com. of the U.S. v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996) ......................................... 21

*Citizens Awareness Network, Inc. v. United States,*
    391 F.3d 338 (1st Cir. 2004) .............................................. 6

*DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) ..................... 33

*Eastern Bridge, LLC v. Chao,*
    320 F.3d 84 (1st Cir. 2003) .............................................. 26

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .................................................... 31-32

*Federal Express Corp. v. U.S. Department of Com.,*
    39 F.4th 756 (D.C. Cir. 2022) ......................................... 22

**Cases**                                                    **Page(s)**

*Foster v. Pitney Bowes Corp.,*
   549 F. App'x 982 (Fed. Cir. 2013) ...................................... 25

*Foster v. Pitney Bowes Inc.,*
   No. 11-7303, 2012 WL 2997810 (E.D. Pa. July 23, 2012) ................ 25

*Jeffries v. Barr,*
   965 F.3d 843 (D.C. Cir. 2020) ........................................ 20

*Knapp Med. Ctr. v. Hargan,*
   875 F.3d 1125 (D.C. Cir. 2017) ....................................... 24

*Kreschollek v. Southern Stevedoring Co.,*
   78 F.3d 868 (3d Cir. 1996) ........................................... 26

*LeMay v. U.S. Postal Serv.,*
   450 F.3d 797 (8th Cir. 2006) ......................................... 25

*Licata v. U.S. Postal Serv.,*
   33 F.3d 259 (3d Cir. 1994) ........................................... 23

*McCarthy v. Madigan,*
   503 U.S. 140 (1992) ............................................... 27, 29

*Nader v. Volpe,*
   466 F.2d 261 (D.C. Cir. 1972) ........................................ 30

*National Air Traffic Controllers Ass'n AFL-CIO v. Federal Serv.
   Impasses Panel,*
   437 F.3d 1256 (D.C. Cir. 2006) ....................................... 22

*Nken v. Holder,*
   556 U.S. 418 (2009) .................................................. 31

*Northern Air Cargo v. U.S. Postal Serv.,*
   674 F.3d 852 (D.C. Cir. 2012) ........................................ 21

*Pennsylvania v. DeJoy,*
   490 F. Supp. 3d 833 (E.D. Pa. 2020) .................................. 25

| Cases | Page(s) |
|---|---|

*Sears, Roebuck & Co. v. U.S. Postal Serv.*,
844 F.3d 260 (D.C. Cir. 2016) ............................................... 21

*Securities & Exch. Comm'n v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989) ..........................................32-34

*Shelby Res., Inc. v. U.S. Postal Serv.*,
619 F. Supp. 1546 (S.D.N.Y. 1985) ...................................... 25

*Tedesco v. U.S. Postal Serv.*,
553 F. Supp. 1387 (W.D. Pa. 1983) ...................................... 25

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .............................................................. 26

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) ................................... 31, 34-35

## Federal Statutes

28 U.S.C. § 1339 ............................................... 6, 14, 18, 23

39 U.S.C.
§ 409 ......................................................... 7, 14, 18, 23
§ 410 ................................................................................... 6
§ 502 ................................................................................... 5
§ 3661 ..............................................................................5-6
§ 3662 ................................................................. 7, 18, 24, 26
§ 3663 ................................................................................. 7

Pub. L. No. 91-375, 84 Stat. 719 (1970) .................................... 4

Pub. L. No. 109-435 § 601, 120 Stat. 3198 (2006).................... 5

## State Statutes

Hawaiʻi Rev. Stat. Ann. § 11-102 ............................................ 28

New Jersey Stat. Ann. § 19:63-3.............................................. 28

**Federal Regulation**                                                  **Page(s)**

39 C.F.R. § 3020.112.................................................................... 6

**Miscellaneous Authorities**

H.R. Rep. No. 91-1104 (1970), *as reprinted in* 1970
    U.S.C.C.A.N. 3649 ............................................................ 4

N.Y. Bd. of Elections, *Request a Ballot* (n.d.),
    https://elections.ny.gov/request-ballot................................ 28

# PRELIMINARY STATEMENT

In June and July 2020, defendant-appellant United States Postal Service instituted several policy changes that upended postal operations and caused dramatic delays in mail delivery. These policy changes had an immediate and devastating effect on plaintiffs-appellees'[1] ability to provide critical public services that depend upon timely delivery and receipt of U.S. mail, including providing public services for residents in need, administering mail voting in upcoming elections, and combatting the spread of COVID-19. Plaintiffs brought this suit to immediately halt the policy changes, alleging that defendants engaged in ultra vires agency action because they failed to seek an advisory opinion from the Postal Regulatory Commission before implementing the policy changes, as is required by 39 U.S.C. § 3661(b).

In September 2020, the U.S. District Court for the District of Columbia (Sullivan, J.) preliminarily enjoined all of the challenged policy changes, holding that plaintiffs were likely to succeed on their ultra vires claim and, absent an injunction, plaintiffs would suffer irreparable harm

---

[1] Plaintiffs-appellees are the States of New York, Hawaii, and New Jersey; the City of New York; and the City and County of San Francisco.

to their ability to respond to the ongoing pandemic and facilitate mail voting in the upcoming general election.

In October 2022, the district court granted summary judgment to plaintiffs on their ultra vires claim and entered a declaratory judgment stating that the Postal Service violated 39 U.S.C. § 3661(b) when it implemented nationwide changes to mail service without first seeking an advisory opinion from the Commission. The court entered a permanent injunction limited to a single policy change—the elimination or reduction of late and extra trips—that was chiefly responsible for the disruptions experienced at the outset of the litigation. The permanent injunction requires the Postal Service to request an advisory opinion before implementing a similar change but only in circumstances where nationwide service scores drop below ten percent over a two-week period.

This Court should affirm. It is well settled that an ultra vires cause of action will lie against the Postal Service where the agency acts outside the boundaries of its statutory authority. And here, the Postal Service does not dispute that it violated § 3661(b) in July 2020 when it implemented nationwide changes to mail service without first seeking an advisory opinion from the Commission. Indeed, defendants did not

appeal the September 2020 preliminary injunction decision, which found that plaintiffs were likely to succeed on the merits of their ultra vires claim.

Instead, defendants argue that the district court lost jurisdiction to hear the ultra vires claim by the time it granted summary judgment and a permanent injunction to plaintiffs in October 2022, because the exigencies related to the 2020 general election had passed. To the contrary, the district court properly concluded that administrative review through the Postal Regulatory Commission is not an exclusive remedy and that such review did not provide an adequate means of vindicating plaintiffs' rights. For similar reasons, the district court appropriately entered prospective permanent injunctive relief, which ensures that the Postal Service complies with its statutory obligation to seek an advisory opinion before under-taking a policy change that is likely to have nationwide impact.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Columbia exercised jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a) and 39 U.S.C. § 409. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the district court properly exercised ultra vires review.

2. Whether the district court abused its discretion in entering a permanent injunction.

## PERTINENT STATUTES

All applicable statutes are contained in the Brief for Appellants.

## STATEMENT OF THE CASE

### A.    Statutory Background

In 1970, Congress enacted the Postal Reorganization Act to restructure the Postal Service and shield the agency from direct political pressures. Pub. L. No. 91-375, 84 Stat. 719 (1970) (codified at 39 U.S.C. § 101 et seq.); H.R. Rep. No. 91-1104 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 3649, 3650. Among other things, the Postal Reorganization Act removed the agency's predecessor from the Cabinet, established the Postal Service as an independent agency within the executive branch, removed the power to appoint the Postmaster General from the President, and created the Postal Rate Commission, an independent oversight body. *See* H.R. Rep. No. 91-1104, *as reprinted in* 1970 U.S.C.C.A.N. at 3657.

In 2006, the Postal Accountability and Enhancement Act replaced the Postal Rate Commission with the Postal Regulatory Commission, providing it with broader regulatory powers over the Postal Service. *See* Pub. L. No. 109-435, § 601, 120 Stat. 3198, 3238-39 (2006) (codified at 39 U.S.C. §§ 501-505). The Commission maintains political independence through five bipartisan Commissioners who are appointed by the President, confirmed by the Senate, and may be removed only for cause. *See* 39 U.S.C. § 502(a).

The Postal Service is barred from implementing changes "which will generally affect service on a nationwide or substantially nationwide basis" unless it has first submitted a proposal to the Commission, which must conduct a formal hearing on the record on the proposed changes. *Id.* § 3661(b)-(c). Specifically, whenever "the Postal Service determines that there should be a change" of that nature, "it shall submit a proposal, within a reasonable time prior to the effective date of such proposal." *Id.* § 3661(b). The Postal Service's proposal to the Commission must also "request[] an advisory opinion on the change." *Id.* The Commission's regulations then require the issuance of its opinion "not less than 90 days

before the proposed effective date of the change in the nature of postal services involved." 39 C.F.R. § 3020.112.

The statute prohibits the Commission from issuing an advisory opinion on a proposal "until an opportunity for hearing on the record under sections 556 and 557 of title 5 has been accorded to the Postal Service, users of the mail, and an officer of the Commission who shall be required to represent the interests of the general public." 39 U.S.C. § 3661(c); *see also Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 356 (1st Cir. 2004) (describing the requirements of 5 U.S.C. §§ 556 and 557 for a hearing "on the record"). The statute further provides that the Commission's "opinion shall be in writing and shall include a certification by each Commissioner agreeing with the opinion that in his judgment the opinion conforms to the policies established under this title." 39 U.S.C. § 3661(c).

Congress has generally exempted actions of the Postal Service from review under the Administrative Procedure Act. *See id.* § 410(a). However, federal district courts retain "original jurisdiction of any civil action arising under any Act of Congress relating to the [P]ostal [S]ervice," 28 U.S.C.

§ 1339, including "all actions brought by or against the Postal Service," 39 U.S.C. § 409(a).

In addition, the statute provides that an "interested person . . . who believes the Postal Service is not operating in conformance with" chapter 36 of title 39 "may lodge a complaint with the Postal Regulatory Commission." *Id.* § 3662(a). Within ninety days of receiving a complaint the Postal Service must either "begin proceedings on such complaint" or "issue an order dismissing [such] complaint." *Id.* § 3662(b)(1)(A). If the interested person is unsatisfied with the Postal Service's response or if the Postal Service fails to comply with the above time frame, such a person "may" file a petition with the D.C. Circuit. *Id.* § 3663.

## B.    Factual Background

For decades, the Postal Service dedicated the staff hours necessary to ensure that all the mail ready to be delivered on a particular day is delivered on that day. (Joint Appendix (J.A.) 493-494.) In June and July 2020, the Postal Service departed from that longstanding policy by over-hauling how the agency collects, processes, and delivers mail throughout the country. (*See* J.A. 476-477, 686.)

First, the Postal Service dramatically reduced the number of high-speed sorting machines used to process mail at postal facilities across the country. (*See* J.A. 928, 1339.) Although the agency had not reduced its sorting fleet by more than 6.9% since fiscal year 2016 (*see* J.A. 1339), the Postal Service suddenly more than doubled its reduction rate to 14.7% for fiscal year 2020—a total of 711 machines (J.A. 1339). Of these 711 machines, the reduction of over 600 was announced through a letter to the President of the American Postal Workers Union on June 17, 2020. (*See* J.A. 928-930.)

Second, the Postal Service began new efforts to reduce unearned overtime. Specifically, on June 26, 2020, the Postal Service held a tele-conference with area vice presidents, the postal officials each responsible for the agency's seven service regions. (J.A. 162; *see* J.A. 2629, 2633-2661.) At the teleconference, the area vice presidents were asked to go "all in" on strategies to reduce "unearned overtime."[2] (J.A. 729-731; *see also* J.A. 2632-2634.) As part of these new efforts, the Postal Service

---

[2] Unearned overtime accrues when a postal employee requires additional time to complete their regular workload, as is sometimes necessary. (*See* J.A. 726-729.)

8

launched a "Caseless" pilot that required letter carriers to "case"—or sort—mail into delivery point sequence without any casing equipment and, at times, sort mail while already out on their delivery routes. (J.A. 734-736; *see also* J.A. 1793-1794, 2637.)

Third, the Postal Service established an organization-wide policy to eliminate late and extra trips, without conducting any analysis of the impact on cost, service performance, or election mail. (J.A. 751-758, 774-779; *see also* J.A. 1207.) At a teleconference for area vice presidents held on July 10, 2020, Chief Operating Officer David Williams presented the new policy for eliminating late and extra trips with a PowerPoint presentation, which included a slide stating simply "NO EXTRA TRANSPORTATION" and "NO LATE TRANSPORTATION," and slides requiring much higher levels of approval for such trips. (J.A. 960; *see also* J.A. 952-967.)

Following that teleconference and presentation, the area vice presidents and their staff began circulating instructions that late and extra trips were "no longer authorized or accepted." (J.A. 969-970; *see* J.A. 723, 1920-1921, 2695.) Four days later, Vice President of Logistics Robert Cintron circulated a document entitled "Keys to Success for Elimination of Extras and Lates" that laid out when late and extra trips

were "Acceptable" and "Not Acceptable." (J.A. 1362-1367; *see* J.A. 780, 1920-1921.) In his cover email, Cintron explained that the "focus is to eliminate unplanned extra transportation," "[d]eviations to the extent possible should be utilized to eliminate the extras," and "[t]rips must depart on time." (J.A. 975.) Immediately, the number of late and extra trips dropped "significantly." (J.A. 788-789.)

Fourth, as part of its efforts to reduce work hours, the Postal Service began a pilot initiative entitled "Expedited to Street/Afternoon Sortation" at 384 facilities, including in plaintiffs' jurisdictions. (*See* J.A. 981-1006, 1008-1014, 2637.) Under that pilot, city carriers do not sort any mail during the morning in order to "reduce[] morning office time." (J.A. 981; *see* J.A. 996.) Instead, they must leave for the routes straight away, sort First Class flats into delivery sequence while already on their delivery routes, and then return in the afternoon to sort mail that could have gone out that morning for next day. (J.A. 981.)

Fifth, the Postal Service changed its prior practice of delivering election mail at First Class speeds regardless of the paid class of service. (J.A. 480, 798, 808-811, 886, 948-950, 1016-1018, 1135.) The agency indicated this change by letter to state officials on or around July 30,

2020, informing them that failure to pay the First Class rate would risk ballots not being delivered on time and, consequently, the potential disenfranchisement of large swaths of voters. (J.A. 810-811, 1016-1025.)

The implementation of the policy changes described above immediately resulted in a decrease in timely mail delivery. (*See* J.A. 51-52; J.A. 815, 830-835, 972-973, 1124.) For example, on-time delivery of First Class mail dropped from a consistent range between 89% to 94% in the preceding six months to 85.26% in the week the policy eliminating late and extra trips was implemented. (J.A. 815.) By the second week of August, the on-time delivery rate for First Class mail fell to 81.47%, or approximately 85 million *more* late deliveries for that week than under pre-July delivery rates. (J.A. 815, 1160.) On-time delivery for marketing mail dropped first to 82.94% in the second week of July, then further down to 79.76% the next week (J.A. 815). Overall, delayed mail increased 21% at processing facilities and 143% at post offices—a self-reported increase of *over 400 million pieces* of delayed mail just for the week ending July 31, 2020. (J.A. 2084.)

In mid-August 2020, the Postal Service "suspend[ed]" the reduction of sorting machines, the Expedited to Street/Afternoon Sortation pilot,

and the new election mail policy, but did not unwind the policy elimi-
nating late and extra trips. (*See* J.A. 1040-1041.)

## C.   **Procedural History**

Plaintiffs are state and local governments who provide a wide range
of critical services that depend upon timely delivery and receipt of U.S.
mail, including providing public assistance to low-income families, securing
access to healthcare, enforcing child support orders, and providing
drivers' licenses. (J.A. 460-461, 464-465, 467-469, 482-484, 524-525, 556-
558, 642-643, 653-656.) The 2020 policy changes severely disrupted
plaintiffs' operations at the height of the COVID-19 pandemic, and
particularly threatened plaintiffs' ability to administer elections given
the unprecedented number of ballots sent by mail. (*See* J.A. 540-548.)

In August 2020, plaintiffs filed this lawsuit in the U.S. District
Court for the District of Columbia to challenge the Postal Service's policy
changes. (J.A. 22-85.) As relevant to this appeal, plaintiffs contended that
the Postal Service failed to comply with 39 U.S.C. § 3661(b), which
requires the agency to obtain an advisory opinion from the Commission

before implementing changes that have a nationwide impact on postal services.[3] (J.A. 32, 59-60.)

In September 2020, the district court (Sullivan, J.) granted plaintiffs' motion for a preliminary injunction preventing defendants from continuing to implement the challenged policy changes. (J.A. 104-105, 142.) The court held that plaintiffs were likely to succeed on the merits of their § 3661(b) claim, that such claim was likely reviewable pursuant to the ultra vires doctrine, and that, on the merits, the Postal Service likely violated § 3661(b) by failing to obtain an advisory opinion before implementing the various policy changes. (J.A. 115-135.) The court also held that, in the absence of a preliminary injunction, plaintiffs will suffer irreparable harm and further held that the balance of equities and public interest favored a preliminary injunction. (J.A. 135-142.) In April 2021, the district court modified the preliminary injunction to clarify that the Postal Service could deny approval for extra trips under certain narrow circumstances. (J.A. 331-347.)

---

[3] The complaint asserted other statutory and constitutional claims (J.A. 81-82), none of which are at issue on this appeal.

### D.	The District Court's Summary Judgment Decision

In October 2022, the district court granted in part and denied in part the parties' cross-motions for summary judgment. (J.A. 348-413.) As relevant to this appeal, the court granted summary judgment to plaintiffs on their § 3661(b) claim. (J.A. 371-391.)

First, the court concluded that it had subject matter jurisdiction (J.A. 371-382), observing that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the [P]ostal [S]ervice," 28 U.S.C. § 1339, including "all actions brought by or against the Postal Service," 39 U.S.C. § 409(a). (J.A. 372.) The court rejected the Postal Service's contention that the Commission complaint process provided in § 3662(b) is the exclusive remedy for violations of the postal statutes. (J.A. 375-376.) The court concluded that § 3662(b)'s text did not evince an intent to preclude judicial review, noting that § 3662(b) merely provides that an interested person "may" lodge a Commission complaint and that nothing in the text or legislative history indicates that Congress intended for such complaints to supersede § 409(a)'s express grant of original jurisdiction over "'all actions brought by or against the Postal Service.'" (J.A. 373-375 (quoting §§ 409(a), 3662(b)).) The court

further determined that precluding district court review would deprive plaintiffs of meaningful review of their § 3661(b) claim because plaintiffs' injuries cannot be remedied "through filing a [§] 3662[(b)] complaint." (J.A. 380 (quotation marks omitted).)

Second, the court held that plaintiffs' § 3661(b) claim was reviewable under the ultra vires doctrine because that claim involved an agency violation of a "clear and specific statutory mandate" that "plainly delineates the outer limits of agency authority." (J.A. 382 (quotation marks omitted).) The court rejected the Postal Service's argument that ultra vires review is unavailable because plaintiffs can vindicate their rights by filing a Commission complaint and waiting up to ninety days for the Commission to either begin proceedings or issue an order dismissing that complaint. (J.A. 373, 390-391.) The court concluded that the Commission complaint process would not allow for judicial review of an adverse Commission ruling within a timeframe that would allow for the meaningful vindication of plaintiffs' rights. (J.A. 390-391.)

On the merits of the ultra vires claim, the court concluded that the Postal Service violated § 3661(b), by failing to submit a proposal to the Commission prior to implementing the 2020 policy changes. (J.A. 384.)

The court observed that the changes resulted in a change in nationwide mail service by causing a "meaningful drop" in postal service performance. (J.A. 384.)

Lastly, the court granted injunctive and declaratory relief. (J.A. 412-413.) Specifically, the court granted declaratory relief to plaintiffs, holding that the Postal Service's "steep reduction in late and extra trips in July 2020 violated Section 3661(b)" because the "agency failed to first seek an advisory opinion from the [Commission]." (J.A. 413.) The court also issued a permanent injunction requiring the Postal Service to obtain an advisory opinion from the Commission before implementing changes related to "prohibiting" or "curtailing" late and extra trips, but only in circumstances where "nationwide service scores decline on average by more than 10 percentage points for a period of at least two[]weeks."[4] (J.A. 412-413.) The court noted that its permanent injunction is narrower than its preliminary injunction (which enjoined all of the challenged 2020 policy changes (*supra* at 13)) because the evidence undisputably demon-

_____

[4] In March 2023, the district court clarified that the "nationwide service scores" are "to be measured by the composite score of service performance measurement data on market dominant services." (J.A. 431, 440-441.)

strated that the changes related to reducing or eliminating late and extra trips were the primary cause of the substantial decline in nationwide mail service in the relevant period. (J.A. 412-413.)

## SUMMARY OF ARGUMENT

The Postal Service does not dispute, for purposes of this appeal, that it violated 39 U.S.C. § 3661(b) when it adopted the 2020 policy changes without first seeking an advisory opinion from the Postal Regulatory Commission. And the Postal Service did not appeal the district court's preliminary injunction, which found that plaintiffs were likely to succeed on the merits of their ultra vires claim. Instead, the Postal Service argues that the district court somehow lost jurisdiction to resolve the summary judgment motion, or, in the alternative, abused its discretion in entering a permanent injunction. The Postal Service is wrong on both fronts.

First, the district court properly concluded that it had jurisdiction to hear plaintiffs' ultra vires claim. As this Court has held, ultra vires review is appropriate where: (i) there is no express preclusion of judicial review, and (ii) there is no alternative procedure that can provide a meaningful and adequate means of vindicating the statutory right. *See*

*Board of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 42-44 (1991). Both requirements are met here.

The pertinent federal statutes expressly provide that district courts have jurisdiction to review actions involving the Postal Service. 28 U.S.C. § 1339; 39 U.S.C. § 409(a). Contrary to the Postal Service's view (Br. for Appellants (Br.) at 39-40), the alternative mechanism of administrative review provided in 39 U.S.C. § 3662 does not eliminate the judicial review plainly available under 39 U.S.C. § 409(a) and 28 U.S.C. § 1339.

Ultra vires review is also appropriate because the administrative review set forth in 39 U.S.C. § 3662 cannot afford plaintiffs meaningful review within a time frame that would allow for the vindication of their rights. The statute expressly permits the Commission to wait up to ninety days after a complaint is filed to "begin proceedings," 39 U.S.C. § 3662(b)(1)(A)(i), and the Commission has no authority to order injunctive relief to prevent the Postal Service from implementing unlawful changes to mail service during the pendency of proceedings. Therefore, without district court review, plaintiffs would be unable to obtain any immediate relief from the irreparable injuries they suffered and would continue to

suffer as a result of unlawful policy changes that affect mail service on a nationwide or substantially nationwide basis.

Contrary to the Postal Service's argument (Br. at 29), the fact that the district court decided the cross-motions for summary judgment in October 2022, two years after the motions were filed, has no relevance to whether the court properly exercised jurisdiction. Defendants' arguments turn on the supposition that plaintiffs could have received timely relief from the Commission for any injuries postdating the November 2020 election. *See* Br. at 34-37. However, the record demonstrates that plaintiffs suffer immediate harms from delays in mail delivery caused by the Postal Service's adoption of changes outside of the appropriate statutory process, and that those harms are not limited to interference with election administration but also hamper plaintiffs' ability to provide critical public services. Absent review in the district court, plaintiffs would have no way of preventing the Postal Service from causing yet another collapse in mail service through the unauthorized adoption of policies affecting mail service on a nationwide basis.

Second, and for similar reasons, the district court did not abuse its discretion in entering the permanent injunction. Rather than "intrud[ing]"

on congressional authority (Br. at 47), the injunction preserves the Commission's role under the postal statutes by merely requiring the Postal Service to comply with its existing statutory obligation to seek out advisory opinions from the Commission before implementing changes to postal service that are likely to have a nationwide impact. The injunction leaves the Postal Service ample room to implement narrower policy changes without first seeking an advisory opinion because the injunction applies only in circumstances where the nationwide service scores drop more than ten percent over a two-week period. Indeed, the Postal Service does not argue that it has been prevented from implementing any policy change following the entry of this permanent injunction.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *See Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020). It reviews a grant of permanent injunctive relief or declaratory judgment for abuse of discretion. *See Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1361 (D.C. Cir. 2023).

## ARGUMENT

## POINT I

### THE DISTRICT COURT PROPERLY EXERCISED JUDICIAL REVIEW OVER THE POSTAL SERVICE'S UNLAWFUL CHANGES TO NATIONWIDE MAIL SERVICE

The district court properly concluded that plaintiffs' § 3661(b) claim is reviewable pursuant to the ultra vires doctrine. The ultra vires doctrine is rooted in the straight-forward principle that "Congress intends the executive to obey its statutory commands," and "it expects the courts to grant relief when an executive agency violates such a command." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 681 (1986); *accord Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (quoting *Michigan Academy*). This Court has repeatedly applied the doctrine to review Postal Service actions, like those challenged here, that are outside the boundaries of the agency's statutory authority. *See, e.g., Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016); *Northern Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003).

Ultra vires review applies where: (i) the agency has acted "'in excess of its delegated powers and contrary to a specific prohibition' which 'was clear and mandatory,'" *National Air Traffic Controllers Ass'n AFL-CIO v. Federal Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (alteration marks omitted) (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)), (ii) there is no express preclusion of judicial review, and (iii) there is no alternative procedure that can provide a "meaningful and adequate means of vindicating [the] statutory rights," *MCorp Fin.*, 502 U.S. at 43; *see also Federal Express Corp. v. U.S. Department of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022). All three requirements are satisfied here.

The Postal Service does not dispute (*see* Br. at 1-4, 28-30) that the 2020 policy changes affect service on a "nationwide or substantially nationwide basis" and are therefore subject to § 3661(b). Nor does the Postal Service dispute that it implemented these changes in a manner that denied all interested members of the public (including plaintiffs) the procedural protections required by § 3661(c)—including the requirements that there be a specific proposal from the Postal Service, that there be a hearing on the record with all protections provided for formal hearings under the Administrative Procedure Act, and that all procedural protec-

tions provided by Commission regulations be observed as well. Instead, the Postal Service argues that federal law precludes judicial review of the challenged action and that the administrative review process available under § 3662 can vindicate plaintiffs' statutory rights under § 3661. Br. at 31-43. Both arguments are incorrect.

## A. The Postal Statutes Do Not Preclude Judicial Review.

Far from precluding judicial review, the pertinent federal statutes expressly provide that district courts have jurisdiction to review actions involving the Postal Service. For example, 28 U.S.C. § 1339 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the [P]ostal [S]ervice," and 39 U.S.C. § 409(a) further provides that the "district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service" unless "otherwise provided in" title 39. As the Third Circuit observed, it is difficult to "imagine how Congress could grant jurisdiction more plainly." *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 261 (3d Cir. 1994).

To be sure, 39 U.S.C. § 3662(a) provides a separate process for lodging service-related complaints with the Postal Regulatory Commission.

But the text of § 3662 makes clear that this process serves as an *alternative* to, rather than a replacement of, judicial review. Specifically, that section provides that an interested person "*may* lodge a complaint with the Postal Regulatory Commission." 39 U.S.C. § 3662(a) (emphasis added). A provision permitting a complaint to be filed with the Commission falls far short of the "clear statement of congressional intent" that would be required to divest a court of jurisdiction. *See Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017).

For that reason, the Postal Service misses the mark in arguing that the district court "focus[ed] narrowly on the word 'may'" in concluding that it had jurisdiction over the § 3662(b) claim. *See* Br. at 40-41 & n.9. The district court primarily relied on Congress's express grant of jurisdiction in § 409(a), and the use of the word "may" in § 3662(a) provided merely confirmation that Congress did not intend to supersede that jurisdiction. (J.A. 374-376.)

The out-of-circuit cases the Postal Service cites (Br. at 33-34) similarly do not support the proposition that Congress intended to oust district courts of jurisdiction over § 3661(b) claims. Those cases involved "run-of-the-mill allegations of unsatisfactory service or issues far afield

from those contemplated in section 3661(b)." *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 861 (E.D. Pa. 2020) (analyzing cases). Unlike the claims in those cases, which were brought under § 3661(a) to challenge the adequacy and efficiency of service, plaintiffs' challenge here is that the Postal Service acted beyond its authority in making changes to nationwide service in violation of § 3661(b), a wholly separate provision.

Indeed, numerous courts have held that § 3662 is "a specific grant of authority over a defined category of postal rate/postal service concerns" that are not nationwide in nature. *See LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 800 (8th Cir. 2006); *see also Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 986 (Fed. Cir. 2013) (citing *LeMay*); *Foster v. Pitney Bowes Inc.*, No. 11-7303, 2012 WL 2997810, at *4 (E.D. Pa. July 23, 2012) (citing *LeMay*); *Shelby Res., Inc. v. U.S. Postal Serv.*, 619 F. Supp. 1546, 1549 (S.D.N.Y. 1985); *Tedesco v. U.S. Postal Serv.*, 553 F. Supp. 1387, 1390 (W.D. Pa. 1983). In any event, this Court need not determine whether § 3662 is exclusive to individual rate and service concerns to conclude that § 3662 does not foreclose judicial review of matters pertaining to policy changes affecting nationwide service.

**B.** **Section 3662's Administrative Review Process Does Not Provide Meaningful and Adequate Means of Vindicating Plaintiffs' Rights.**

The district court correctly concluded that § 3662's administrative review process would not afford plaintiffs a meaningful vindication of their rights. (J.A. 390-391.) *See MCorp Fin.*, 502 U.S. at 43-44 (discussing "meaningful and adequate opportunity for judicial review"). Specifically, § 3662(b)(1)(A) permits the Commission to wait up to ninety days after a complaint is filed to "begin proceedings," and during the pendency of those proceedings the Commission has no authority to prevent the Postal Service from implementing unlawful changes to mail service.

"[D]eferred review may not in reality be effective," *Eastern Bridge, LLC v. Chao*, 320 F.3d 84, 90 (1st Cir. 2003), especially where a plaintiff is likely to suffer "serious irreparable injury" in the absence of prompt district court review or the availability of immediate injunctive relief, *Kreschollek v. Southern Stevedoring Co.*, 78 F.3d 868, 875 (3d Cir. 1996). *Cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216-18 (1994) (concluding that there was "no evidence" that "serious harm" would result in the absence of pre-enforcement relief). The absence of immediate relief is critical because it is undisputed that the Postal Service made dramatic

operational changes in June and July 2020 (*supra* at 7-12) that resulted in a nearly ten percent decrease in timely delivery of First Class mail nationwide in comparison to the week before the changes (J.A. 1160), as well as a 143% increase in delayed mail at post offices—representing nearly half a billion pieces of delayed mail just for the week ending in July 31, 2020 (J.A. 2084). The collapse in mail service had an immediate impact on plaintiffs' ability to provide necessary services to residents in need and administer their own laws and regulations including upcoming local, state, and federal elections where mail delays threatened to disenfranchise millions of voters. See *supra* at 12. Plaintiffs are not required to seek out an administrative remedy while experiencing these irreparable injuries. *See McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992), *superseded by statute*, 42 U.S.C. § 1997e et seq., *as recognized in*, *Woodford v. Ngo*, 548 U.S. 81 (2006).[5]

---

[5] Nor is there any merit to the Postal Service's argument that plaintiffs should have "pursue[d] a claim before the [Commission]" after entry of the preliminary injunction and before entry of the permanent injunction (Br. at 35-36; *see id.* at 21). Any such claim would be moot because the preliminary injunction had already prevented the Postal Service from implementing its unlawful changes to nationwide mail service.

Contrary to the Postal Service's argument (Br. at 29), plaintiffs' injuries did not become moot after the November 2020 general election. Rather, plaintiffs' election-related injuries relate to the potential that mail delays caused by nationwide policy changes would disenfranchise voters in any election following the enactment of state laws and authorities authorizing expanded access to vote by mail (*see, e.g.*, J.A. 29-30, 58-69, 565-566, 676-678), including federal, state, and local races held in November 2020, June 2021, and November 2021 (*see, e.g.*, J.A. 46, 59, 239, 326, 568.) Far from being "overtaken by events" (Br. at 29), plaintiffs' election-related injuries were at their height at the time the district court issued its permanent injunction in October 2022 because mail voting for the November 2022 general election was currently underway in plaintiffs' jurisdictions.[6] Without injunctive relief, plaintiffs would have no way of

---

[6] *See e.g.*, Haw. Rev. Stat. Ann. § 11-102(b) (enabling voters to receive a mail ballot at least eighteen days before the election); N.J. Stat. Ann. § 19:63-3(b)(1) (authorizing voters to apply for a mail-in ballot any time prior to the seventh day before the election); N.Y. Bd. of Elections, *Request a Ballot* (n.d.), https://elections.ny.gov/request-ballot (stating that an "early mail ballot" will be sent to a voter forty-six days before a federal, state, county, city, or town election).

preventing the Postal Service from causing yet another collapse in mail service in the run-up to an important election.

Nor is there support for the contention (Br. at 37-38) that the § 3662 review scheme could provide meaningful review of plaintiffs' nonelection related injuries when the permanent injunction was entered in October 2022. The Postal Service does not dispute that it implemented unlawful changes to nationwide mail service in June and July 2020; that those changes resulted in immediate and ongoing delays to on-time delivery of the mail; and that such delays negatively affected plaintiffs' ability to provide critical public services and provide benefits to eligible residents. See *supra* at 7-12. If plaintiffs were forced to vindicate their rights solely through the § 3662 review scheme, these injuries would compound, and the Postal Service would be free to fully implement its unlawful changes to service all while escaping judicial review until after achieving the intended effect of depriving the public of critical statutory, participatory, and democratic rights. Plaintiffs are not required to endure such injuries in order to vindicate their rights. *McCarthy*, 503 U.S. at 146-47.

Lastly, the Postal Service is wrong to argue that plaintiffs' § 3661(b) claim must be first adjudicated by the Commission because the claim

"falls directly in the Commission's 'expertise'" (Br. at 41-43). The Postal Service does not dispute that it ignored the very process through which Congress specifically required it to seek out the expertise of the Commission before implementing changes in nationwide postal service. See *supra* at 7-12. The fact that the Postal Service does not dispute the § 3661(b) violation supports the conclusion that this case involves a straightforward issue of noncompliance with a statutory provision—an issue courts are well-equipped to resolve. *See Arent v. Shalala*, 70 F.3d 610, 614 (D.C. Cir. 1995). In any case, this Court has held that agency expertise need not be brought to bear on a problem when there has been a showing, as is the case here, of a "patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review." *Nader v. Volpe*, 466 F.2d 261, 266 (D.C. Cir. 1972) (footnotes omitted).

## POINT II

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ENTERING THE PERMANENT INJUNCTION

As alternative relief, the Postal Service asks this Court to vacate the permanent injunction (Br. at 43-50). This request should also be denied.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *accord Anatol Zukerman & Charles Krause Reporting, LLC*, 64 F.4th at 1361 (quoting *eBay Inc.*). In deciding whether to grant an injunction, a district court assesses whether the party seeking an injunction has demonstrated: (i) that it has suffered an irreparable injury; (ii) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; and (iii) that the balance of hardships and the public interest favors an injunction. *See eBay Inc.*, 547 U.S. at 391; *Nken v. Holder*, 556 U.S. 418, 434-35 (2009). The district court's factual findings are reviewed for clear error. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1127 (D.C. Cir. 2009). In reviewing a decision to grant an injunction, this Court recognizes that "a district judge has

wide latitude in fashioning a remedy," and it "will not disturb the trial court's remedial choice unless there is no reasonable basis for the decision." *Securities & Exch. Comm'n v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989).

The district court did not abuse its discretion in granting a permanent injunction because plaintiffs have shown that nationwide delays caused by the broad elimination of late or extra trips, without review of that practice in an advisory opinion from the Commission, will cause irreparable injury to plaintiffs' ability to provide necessary services to residents in need and administer their own laws and regulations, and that an injunction is the only effective means of remedying those injuries. *See eBay Inc.*, 547 U.S. at 391. There is no merit to the Postal Service's argument that the injunction displaces the Commission's role under the postal statutes by "mandating advisory opinions by the Commission" (Br. at 46-47). The injunction does not mandate that the Commission issue an advisory opinion but rather requires, consistent with the statutory requirements, that the Postal Service *request* such an opinion before implementing a plan to reduce or eliminate late or extra trips in circumstances where the nationwide service scores drop more than ten percent over a

two-week period. See *supra* at 16-17. Far from displacing the postal statutes, the injunction implements statutory obligations by requiring the Postal Service to seek out advisory opinions in circumstances where its changes to service are likely to have a nationwide impact. The injunction therefore "balances the need for relief with deference to" the Postal Service and the Commission. *DL v. District of Columbia*, 860 F.3d 713, 730 (D.C. Cir. 2017).

Nor is the permanent injunction overbroad (Br. at 48-49) given that it leaves the Postal Service ample room to implement certain policy changes without first seeking an advisory opinion. The permanent injunction reflected the district court's judgment that changes related to "prohibiting" or "curtailing" "Late or Extra Trips" were "the primary factor in affecting service on a nationwide or substantially nationwide basis," and directed the Postal Service to request an advisory opinion only when the nationwide service scores dropped more than ten percent over a two-week period as a result of that factor.[7] (J.A. 412.)

_____

[7] The Postal Service faults the district court for relying on nationwide service scores to determine when the injunction applies (Br. at 45), but such scores provide a "reasonable basis," *First City Fin. Corp.*, 890 F.2d

*(continued on the next page)*

For similar reasons, there is no merit to the Postal Service's argument that the injunction would "require[] advisory opinions for actions that might not have 'substantially nationwide' impact" (Br. at 48-49). The only action potentially prohibited by the injunction would be an act to eliminate or reduce late or extra trips, and the Postal Service does not dispute that reductions in such trips primarily caused the substantial decline in nationwide mail service in the relevant period. (*See* J.A. 384-385, 412-413.) The Postal Service claims that the injunction could theoretically prevent reductions in trips that might be "necessary to respond to mail slowdowns" (Br. at 49), but it does not argue that any such hardship has occurred or is even likely to occur. Such speculation falls far short of proving that the district court clearly erred in entering the injunction. *See Philip Morris USA Inc.,* 566 F.3d at 1127.[8]

---

at 1228, for determining when a "change" to postal service will have a "meaningful impact . . . 'on a nationwide or substantially nationwide basis,'" *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262-63 (5th Cir. 1975) (quoting § 3661). Such line-drawing is well within a district court's discretion. *See First City Fin. Corp.*, 890 F.2d at 1228.

[8] If the Postal Service has reason to believe that unintended consequences will result from the permanent injunction it should substantiate that claim in a motion to modify the injunction—as it has done before. (*See* J.A. 242-248.)

Lastly, this Court should reject the Postal Service's argument (Br. at 49-50) that circumstances in October 2022 did not warrant a permanent injunction. The district court found that delays caused by changes to late or extra trips would impair plaintiffs' "ability to provide necessary services to residents in need and administer their own laws and regulations." (J.A. 381.) The Postal Service's argument should be rejected because it does not dispute that the change had such an effect on plaintiffs' operations in 2020 (*supra* at 16-17), nor does it explain why the district court's determination that future changes would have a similar effect is clearly erroneous. *See Philip Morris USA Inc.*, 566 F.3d at 1127.

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's summary judgment order.

Dated: New York, New York
        June 3, 2025

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                      Attorney for Plaintiffs-Appellees

By:   */s/ Kwame N. Akosah*
          KWAME N. AKOSAH
          Assistant Solicitor General

BARBARA D. UNDERWOOD        28 Liberty Street
  *Solicitor General*             New York, NY 10005
ESTER MURDUKHAYEVA          (212) 416-8025
  *Deputy Solicitor General*
KWAME N. AKOSAH
  *Assistant Solicitor General*
     *of Counsel*

Lori N. Tanigawa
  *Deputy Attorney General*
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1282
lori.n.tanigawa@hawaii.gov
*Attorney for State of Hawaiʻi*

Justine M. Longa
Andrew H. Yang
  *Deputy Attorneys General*
Office of the Attorney General
Division of Law
25 Market Street
Trenton, NJ 08625
(609) 376-3377
justine.longa@law.njoag.gov
andrew.yang@law.njoag.gov
*Attorneys for State of New Jersey*

MacKenzie Fillow
  *Assistant Corporation Counsel*
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-4378
mfillow@law.nyc.gov
*Attorney for City of New York*

David Chiu
  *City Attorney*
City Attorney's Office of
San Francisco
One Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, CA 94102-0000
(415) 554-4700
luis.zamora@sfcityatty.org
*Attorney for City and*
  *County of San Francisco*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Ava Mortier, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,799 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

_/s/ Ava Mortier_