# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 7, 2025      Decided July 14, 2026

No. 23-5103

STATE OF NEW YORK, ET AL.,
APPELLEES

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS THE
PRESIDENT OF THE UNITED STATES, ET AL.,
APPELLANTS

———

Consolidated with 24-5047

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:20-cv-02340)

———

*McKaye L. Neumeister*, Attorney, U.S. Department of Justice, argued the cause for appellants. With her on the briefs were *Brett A. Shumate*, Assistant Attorney General, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the opening brief was filed, and *Mark B. Stern*, *Adam C. Jed*, and *Daniel Tenny*, Attorneys.

*Kwame N. Akosah*, Assistant Solicitor General, Office of the Attorney General for the State of New York, argued the cause for appellees. With him on the brief were *Barbara D.*

2

*Underwood*, Solicitor General, *Ester Murdukhayeva*, Deputy Solicitor General, *Lori N. Tanigawa*, Deputy Attorney General, Department of the Attorney General for the State of Hawaii, *Justine M. Longa* and *Andrew H. Yang*, Deputy Attorneys General, Office of the Attorney General for the State of New Jersey, *MacKenzie Fillow*, Assistant Corporation Counsel, New York City Law Department, and *David Chiu*, City Attorney, City Attorney's Office of San Francisco. *Michael J. Myers*, Assistant Attorney General, Office of the Attorney General for the State of New York, and *Mayur P. Saxena*, Assistant Attorney General, Office of the Attorney General for State of New Jersey, entered appearances.

Before: SRINIVASAN, *Chief Judge*, WILKINS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: In 2020, the United States Postal Service made changes to the collection, processing, and delivery of the mail. Several states and municipalities sued in district court, arguing in part that the postal changes would affect voting by mail in the November 2020 election. The district court entered a preliminary injunction against the postal changes and later granted summary judgment for the plaintiffs on one of their claims.

We conclude the district court had no jurisdiction over that claim. Congress created a review scheme that channels certain complaints about Postal Service policies first to the Postal Regulatory Commission, with subsequent review in this court. This statutory review scheme displaced the district court's jurisdiction over the plaintiffs' claim. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). We therefore vacate the grant of summary judgment for the plaintiffs.

3

I.

In the summer of 2020, the Postal Service implemented a set of operational changes that we refer to as the "Postal Policy Changes." The Postal Policy Changes included a reduction in the number of high-speed mail sorting machines, a decrease in employee overtime, the elimination of late or extra mail delivery trips, and a change in the sequence by which some mail carriers sort and deliver the mail. Federal law requires the Postal Service to seek an advisory opinion from the Postal Regulatory Commission before making a "change in the nature of postal services" that will "generally affect service on a nationwide or substantially nationwide basis." 39 U.S.C. § 3661(b). The Postal Service did not request an advisory opinion from the Commission before making the Postal Policy Changes.

In the Postal Accountability and Enhancement Act, Congress provided that complaints about certain Postal Service actions may be filed with the Commission, with review of Commission orders available exclusively in this court. *Id.* §§ 3662–63.

The states of New York, New Jersey, and Hawaii, the city of New York, and the city and county of San Francisco (the "States") opposed the Postal Policy Changes. Instead of making use of the Postal Commission review scheme, the States filed suit in district court. The States argued that the changes, implemented just months before the November 2020 general election, impeded their provision of public services and the ability of their residents to vote by mail. They raised three claims in their August 2020 complaint, including a claim that the Postal Service failed to request an advisory opinion from the Commission before making the Postal Policy Changes.

4

In September 2020, the district court held that the States were likely to succeed on the advisory opinion claim and granted a preliminary injunction against enforcement of the Postal Policy Changes. The court rejected the government's argument that, under *Thunder Basin*, the Postal Commission review scheme precluded district court jurisdiction over the States' advisory opinion claim. In the district court's view, the review scheme provided a separate avenue for relief that did not displace the court's original jurisdiction over suits against the Postal Service. The court also emphasized that the review scheme would not provide the States with meaningful judicial review because the Commission may take up to 90 days to act on an administrative complaint, and the States needed immediate relief ahead of the November election. *See* 39 U.S.C. § 3662(b).

Two years later, the district court granted summary judgment for the States on the advisory opinion claim and for the government on the States' other claims. The court affirmed its previous holding that it had jurisdiction over the advisory opinion claim because the Postal Commission review scheme was merely supplemental and district court review was necessary for the States to obtain prompt relief from the Postal Policy Changes. Concluding that the States' advisory opinion claim succeeded on the merits, the district court permanently enjoined the Postal Service from implementing one of the Postal Policy Changes—the elimination of late or extra trips—without first requesting an advisory opinion from the Commission.

5

The government timely appealed.[1] We review the district court's entry of summary judgment de novo. *Vanda Pharms., Inc. v. FDA*, 123 F.4th 513, 520 (D.C. Cir. 2024).

II.

We begin and end with jurisdiction. The States were required to bring the advisory opinion claim in an administrative complaint filed with the Commission, not in a lawsuit filed with the district court. Because the district court lacked jurisdiction, we reverse.[2]

When Congress channels claims for initial review by an administrative agency, rather than a district court, we must respect that jurisdictional choice. Congress may channel claims by explicitly precluding judicial review. *See, e.g.*, *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 7–9 (2000) (detailing the channeling of Medicare claims via an express statutory preclusion clause). Congress may also channel claims "implicitly, by specifying [an administrative] method to resolve claims about agency action." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

To determine whether a statutory review scheme channels a claim for initial administrative review and thereby precludes

---

[1] The government separately appealed from the district court's permanent injunction and denial of the government's post-trial motion, and from the district court's later final judgment. We consolidated the two appeals.

[2] Since we can "address jurisdictional issues in any order," and we conclude that the statutory review scheme precluded the district court's jurisdiction, we do not address the States' standing to raise the advisory opinion claim. *Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 21 (2023).

6

district court jurisdiction, we employ the two-step *Thunder Basin* framework. *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023). Under that framework, Congress's creation of a statutory review scheme implicitly displaces district court jurisdiction when (1) "such intent is fairly discernible in the statutory scheme," and (2) the claim at issue is "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin*, 510 U.S. at 207, 212 (cleaned up). Applying this framework, we conclude the district court lacked jurisdiction to consider the States' claim that the Postal Service was required to seek an advisory opinion before implementing the Postal Policy Changes.

A.

At *Thunder Basin* step one, we hold that Congress created a specialized review scheme for challenges to Postal Service policy changes, and that scheme generally displaces district court jurisdiction.

"Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (cleaned up). With respect to challenges to agency action, the scheme Congress "typically chooses" is initial review by an agency followed by judicial review in a court of appeals. *Axon*, 143 S. Ct. at 900; *cf. id.* ("The agency effectively fills in for the district court, with the court of appeals providing judicial review."). Accordingly, the Supreme Court has "several times held that the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Id.*; *see Thunder Basin*, 510 U.S. at 207–12; *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–15 (2012). This court has further highlighted that a "detail[ed]" or

7

"comprehensive" statutory review scheme provides additional evidence that Congress channeled claims for initial administrative review. *Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 939–40 (D.C. Cir. 2021) (cleaned up); *see also Patten v. District of Columbia*, 9 F.4th 921, 927 (D.C. Cir. 2021) ("[T]he detailed, precise, and comprehensive nature of an administrative-review scheme counts against immediate resort to federal district court.").

The Postal Commission review scheme contains all the hallmarks of a statutory scheme that precludes district court jurisdiction. The scheme provides for initial administrative review followed by judicial review in the court of appeals. *See Axon*, 143 S. Ct. at 900. Interested persons may file a complaint against the Postal Service with the Commission. 39 U.S.C. § 3662(a). After the Commission has adjudicated a complaint, aggrieved parties may petition for review in the D.C. Circuit. *Id.* § 3663. The statutory scheme also provides a detailed process for Commission review. *See Miriyeva*, 9 F.4th at 939–40. Within 90 days of receiving a complaint, the Commission must either begin proceedings to adjudicate the complaint or dismiss it. 39 U.S.C. § 3662(b)(1). The Commission's failure to address a complaint within 90 days constitutes dismissal. *Id.* § 3662(b)(2). If a complaint is found to be justified, the Commission must order the Postal Service to comply with federal law and, in cases of deliberate noncompliance, may impose a fine. *Id.* § 3662(c)–(d).

Given the structure and nature of the statutory review scheme, we hold that it generally precludes district court jurisdiction. In reaching this conclusion, we draw support from the unanimous agreement of our sister circuits. *See, e.g.*, *White v. U.S. Post Office*, No. 23-1239, 2024 WL 2973705, at *2–3 (10th Cir. June 13, 2024); *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 985–86 (Fed. Cir. 2013) (per curiam); *cf. LeMay*

8

*v. USPS*, 450 F.3d 797, 799–801 (8th Cir. 2006) (concluding the same about an earlier version of section 3662 that did not provide for appellate review).

The States disagree, claiming the statutory review scheme is not exclusive and district courts retain concurrent jurisdiction over challenges to Postal Service actions. We find their arguments unpersuasive.

The States cite other statutes that provide district courts with original jurisdiction over suits related to the Postal Service. *See* 28 U.S.C. § 1339; 39 U.S.C. § 409(a). But such grants must give way when Congress explicitly or implicitly channels claims for initial administrative review. *Axon*, 143 S. Ct. at 900; *cf. LeMay*, 450 F.3d at 799 (holding that broad jurisdictional grants "may be preempted when another, precisely drawn, detailed statute places jurisdiction elsewhere") (cleaned up). The Postal Commission review scheme channels claims to the Commission and implicitly precludes district court jurisdiction.

The States also emphasize how interested persons "may"—but are not required to—file a complaint with the Commission. *See* 39 U.S.C. § 3662(a). That language, however, merely recognizes that a decision by an interested person to challenge actions of the Postal Service is not mandatory. It does not undermine Congress's channeling decision, as confirmed by other statutory schemes containing similar language that courts have found to preclude district court jurisdiction. *See, e.g.*, *Elgin*, 567 U.S. at 12–13; *Thunder Basin*, 510 U.S. at 207–08; *Miriyeva*, 9 F.4th at 939–40.

Finally, the States attempt to distinguish our sister circuits' decisions. They contend those decisions involved claims of inadequate postal services cognizable under 39 U.S.C. § 3661(a), while their advisory opinion claim is brought under

9

39 U.S.C. § 3661(b). This distinction is immaterial given the statutory review scheme. The scheme applies to, among other things, claims that the Postal Service is violating Title 39, Chapter 36, which includes sections 3661(a) and (b). *See* 39 U.S.C. § 3662(a). The out-of-circuit decisions are therefore relevant and persuasive.

The detailed statutory review scheme provides for initial administrative review of claims against the Postal Service, followed by appellate judicial review. The scheme thus channels claims to the Commission and away from district courts.

## B.

"Claims will be found to fall outside of the scope of a special statutory scheme in only limited circumstances." *AFGE, AFL-CIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019) (cleaned up). At *Thunder Basin* step two, the States bear the burden to show that the statutory review scheme, "though exclusive where it applies," does not reach their advisory opinion claim. *Axon*, 143 S. Ct. at 900–01.

The Supreme Court has identified three factors to guide this part of the *Thunder Basin* analysis: (1) "could precluding district court jurisdiction foreclose all meaningful judicial review of the claim"; (2) "is the claim wholly collateral to the statute's review provisions"; and (3) "is the claim outside the agency's expertise." *Axon*, 143 S. Ct. at 900 (cleaned up). These factors do not function as "inputs into a strict mathematical formula," but rather as "general guideposts useful for [determining] … whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy v. SEC*, 803 F.3d 9, 17 (D.C. Cir. 2015). "The ultimate question is how best to understand what Congress has done." *Axon*, 143 S. Ct. at 900. Guided by these factors, we conclude

10

the States' advisory opinion claim is squarely "of the type" that must first be brought to the Commission, and therefore the district court lacked jurisdiction to consider it. *Thunder Basin*, 510 U.S. at 212.

1.

To begin with, the statutory review scheme provides for meaningful judicial review. "The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review." *Axon*, 143 S. Ct. at 901. In this case, the States could have brought their advisory opinion claim in a complaint filed with the Commission and then petitioned this court for review of the Commission's decision. We have repeatedly held that the availability of appellate review of an administrative decision can satisfy the requirement for meaningful judicial review. *See, e.g.*, *Fed. L. Enf't Officers Ass'n*, 62 F.4th at 560–61; *AFGE, AFL-CIO*, 929 F.3d at 758–59.

The States raise two objections to the adequacy of the statutory review scheme, but neither is persuasive.

First, the States argue that pursuing a complaint before the Commission instead of suing in district court would have resulted in irreparable harm that could not have been later remedied by this court. With the impending November 2020 election, the States contend that the Postal Policy Changes would have sharply undermined their ability to provide public services and the ability of their residents to vote by mail. Because the Commission can take up to 90 days to act on a complaint, the States argue they would have suffered irreparable harm if they were unable to obtain immediate relief from a district court.

11

We decline to adopt a general "irreparable harm" exception by which parties can evade jurisdictional channeling provisions. When Congress channels claims to a particular forum, it imposes the constraints of that forum on the channeled claims. *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 638–39 (D.C. Cir. 2013). Here, Congress has channeled claims against the Postal Service to the Commission and allowed the Commission up to 90 days to adjudicate those claims. 39 U.S.C. § 3662(a)–(b). An irreparable harm exception would undermine Congress's creation of the exclusive review scheme and the remedial limitations that accompany it. *Cf. Patten*, 9 F.4th at 928 ("Allowing challengers to proceed through a more general statute is particularly inappropriate when doing so would eviscerate specific requirements of the narrower scheme."). Moreover, the Supreme Court has recognized that many statutory review schemes "require parties to wait before [obtaining appellate review], even when doing so subjects them to significant burdens." *Axon*, 143 S. Ct. at 904 (cleaned up). With a few exceptions, such burdens do not permit parties to circumvent review schemes established by Congress.[3] *Id.*

Second, regardless of whether the States could have brought their advisory opinion claim before the Commission prior to seeking a preliminary injunction from the district court, the government contends that the States should have filed a complaint with the Commission even after the preliminary

---

[3] Because the government challenges the district court's 2022 grant of summary judgment, we need not address whether the statutory review scheme would have foreclosed all meaningful judicial review at the preliminary injunction stage, when the States sought to halt the Postal Policy Changes only months before the November 2020 general election. *Cf. Axon*, 143 S. Ct. at 903–04 (recognizing that a statutory review scheme may not provide meaningful judicial review of certain "here-and-now" injuries that are "impossible to remedy" if judicial review is deferred).

12

injunction issued. The States maintain, however, that the injunction made such a complaint "moot," and therefore they would have been unable to seek appellate review of a Commission decision.

The States essentially argue that because they successfully obtained an injunction, Postal Commission review could no longer result in meaningful judicial review.[4] This argument is flawed. Even under the States' theory, the preliminary injunction did not foreclose all meaningful judicial review through the statutory review scheme. Instead of maintaining their request for summary judgment in district court, the States could have moved to dismiss the case and dissolve the injunction, and then filed a complaint with the Commission. *See* Fed. R. Civ. P. 41(a). Their refusal to do so is understandable, but it demonstrates that their objection is really a disagreement with the limits of the statutory review scheme and the possibility of a 90-day wait. And as we have already explained, the States cannot evade Postal Commission review because it is not their preferred remedial path. *Sec'y of Air Force*, 716 F.3d at 638–39. In deciding this appeal, we must give effect to Congress's channeling decision, which includes the timing and scope of administrative review. *See Patten*, 9 F.4th at 927–28.

---

[4] Although the States frame this problem as one of mootness, it more accurately sounds in standing. The States would, of course, need to show standing to petition this court for review of an adverse Commission ruling. *See Lewis v. Becerra*, 111 F.4th 65, 69–70 & n.1 (D.C. Cir. 2024).

13

2.

Next, the States' advisory opinion claim fits squarely within the statutory review scheme and is therefore not at all collateral to that scheme.

The second *Thunder Basin* factor reflects the "point of special review provisions—to give the agency a heightened role in the matters it customarily handles." *Axon*, 143 S. Ct. at 901. A claim is therefore not collateral if it is merely "an attempt to accomplish what's contemplated by the review scheme," *Miriyeva*, 9 F.4th at 941, or "obtain the same relief [a plaintiff] could seek in the agency proceeding," *Jarkesy*, 803 F.3d at 23. By contrast, structural constitutional claims, such as a challenge to an agency's existence, are wholly collateral. *Free Enter. Fund*, 561 U.S. at 490–91. This is in part because agencies do not normally resolve such constitutional objections. *Axon*, 143 S. Ct. at 904–05; *cf. Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges.").

The States' advisory opinion claim is a procedural objection within the heartland of the Postal Commission review scheme. The claim implicates one of the Commission's statutory responsibilities, namely providing advisory opinions regarding Postal Service policy changes. Interested persons can file a complaint with the Commission alleging a violation of the advisory opinion procedures. 39 U.S.C. § 3662(a). If the complaint is justified, the Commission "shall order" the Postal Service to comply with the statutory requirement. *Id.* § 3662(c). In fact, the Commission has "regularly adjudicated" complaints like the one brought by the States that the Postal

14

Service imposed changes without first seeking an advisory opinion from the Commission.[5] *Elgin*, 567 U.S. at 22.

The States' advisory opinion claim is therefore not like a structural constitutional claim, which would normally be resolved by courts. Because the States' claim fits squarely within the statutory review scheme, it should have been brought first to the Commission.

3.

Finally, determining whether the Postal Service should seek an advisory opinion is a question well within the Commission's expertise. Agencies possess expertise regarding the substantive requirements of statutes that they regularly administer. *Elgin*, 567 U.S. at 23. This third *Thunder Basin* factor reflects Congress's decision to channel claims so that agencies can apply this "distinctive knowledge" at the initial stage of review. *Axon*, 143 S. Ct. at 901. Here, the Commission provides advisory opinions when requested by the Postal Service, and the Commission regularly construes the advisory opinion requirement when resolving complaints against the Postal Service. 39 U.S.C. §§ 3661–62. By administering its statutory obligations, the Commission has distinctive knowledge about when an advisory opinion is necessary.

The States respond that the legal questions in this case are also within the expertise of federal courts. It goes without

---

[5] *See, e.g.*, *Order No. 6067 - Order Granting Motion to Dismiss Complaint*, PRC Docket No. C2022-1 (Dec. 17, 2021), https://perma.cc/9S7Z-SC98 (reviewing and dismissing an advisory opinion complaint filed by 21 states); *Order No. 2136 - Order Dismissing Complaint*, PRC Docket No. C2014-1 (Jul. 28, 2014), https://perma.cc/69SJ-XGKE (reviewing and dismissing an advisory opinion complaint).

15

saying that legal questions are within the expertise of the courts and that the recognition of agency expertise in the *Thunder Basin* framework does not preclude an appellate court from exercising "independent judgment" about legal questions when resolving a subsequent petition for review. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). But at *Thunder Basin* step two, the presumption is that a statutory review scheme is exclusive with respect to claims within its scope. *Jarkesy*, 803 F.3d at 17. The Commission's expertise is just one of several reasons why the review scheme extends to the States' advisory opinion claim. Initial review by the Commission, followed by review in this court, allows both the agency and this court to apply their expertise to claims channeled through the Postal Commission review scheme.

\* \* \*

When Congress has channeled claims away from district courts, we must enforce that jurisdictional choice. Because of the Postal Commission review scheme, the district court had no jurisdiction over the States' advisory opinion claim. Accordingly, we vacate the grant of summary judgment for the States and remand with instructions for the court to dismiss the advisory opinion claim.

*So ordered.*